'[14534. Department Two.—June 12, 1893.]

THOMAS BOYSON, APPELLANT, *v.* S. F. THORN, RE-
SPONDENT.

ACTION— MALICIOUS INDUCING OF BREACH OF CONTRACT.—An action will not lie
against one, who, from malicious motives, but without threats, violence, false-
hood, deception, or benefit to himself, induces  _ . ιο violate his contract
with the plaintiff, with whom he does not stand in the relation of master and
servant, *or any other personal relation.*

ID.—MALICIOUS MOTIVES IMMATERIAL WHERE ACT IS NOT A LEGAL INJURY.—An
act which does not amount to a legal injury cannot be actionable because it is
done with a bad or malicious motive or intent.  Malicious motives make a bad
act worse, but cannot make that a wrong which in its own essence is lawful.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco.

The facts are stated in the opinion of the court.

*Carroll Cook,* and *J. E. Foulds,* for Appellant.

The action is maintainable and the demurrer was improperly
sustained.  (*Lumley* v. *Gye,* 2 El. & B. 216; Law J. 22 Q. B.
463; *Bowen* v. *Hall,* Law R. 6 Q. B. D. 333; Pollock on
Torts, pp. 453, 454; *Walker* v. *Cronin,* 107 Mass. 555; *Rice*
v. *Manley,* 66 N. Y. 82; 23 Am. Rep. 30; *Benton* v. *Pratt,* 2
Wend. 385; 20 Am. Dec. 623; *Jeter* v. *Blocker,* 43 Ga. 331;
*Dickson* v. *Dickson,* 33 La. An. 1261; *Haskins* v. *Royster,* 70
N. C. 601; 16 Am. Rep. 780; *Jones* v. *Stanly,* 76 N. C. 355;
*Lally* v. *Cantwell,* 30 Mo. App. 524; Civ. Code, sec. 3511.)

*J. M. Allen, William F. Herrin, W. H. L. Barnes,* and *Isaac
Frohman,* for Respondent.

An action does not lie for inducing another to break his con-
tract with a third person.  (Cooley on Torts, 2d ed., p. 581;
Pollock on Torts, 2d ed., p. 481; Schouler on Domestic Rela-
tions, sec. 487; *Bowen* v. *Hall,* Law R. 6 Q. B. D. 338; 21 Am.
Law Rev., pp. 521, 522; *Chambers* v. *Baldwin,* 15 S. W. Rep.
57; *Boulier* v. *Macauley,* 15 S. W. Rep. 60; *Ashley* v. *Dixon,*
48 N. Y. 430; 8 Am. Rep. 559.)  An act not unlawful in itself
is not made unlawful by a malicious motive.  (Cooley on Torts,
2d ed., pp. 830, 832; *Jenkins* v. *Fowler,* 24 Pa. St. 308; *Payne*
v. *Western & A. R. R. Co.,* 13 Lea, 507; 49 Am. Rep. 666;

*Heywood* v. *Tillson*, 75 Me. 225; 46 Am. Rep. 373; *Mahan* v. *Brown*, 13 Wend. 261; *Hunt* v. *Simonds*, 19 Mo. 583; *South Royalton Bank* v. *Suffolk Bank*, 27 Vt. 505; *Glendon Iron Co.* v. *Uhler*, 75 Pa. St. 467; 15 Am. Rep. 599; *Auburn etc. Co.* v. *Douglass*, 9 N. Y. 444; *Frazier* v. *Brown*, 12 Ohio St. 294; *Kiff* v. *Youmans*, 86 N. Y. 324; 40 Am. Rep. 543; *Lumley* v. *Gye*, 2 El. & B. 246, per Coleridge, J.; *Bowen* v. *Hall*, Law R. 6 Q. B. D. 338.)

HAYNES, C.—Defendant demurred to plaintiff's complaint, the demurrer was sustained, and judgment was thereupon rendered dismissing the action, from which judgment the plaintiff appeals.

The complaint alleges that Frank G. Newlands is the owner and in possession and control of the Palace Hotel in the city of San Francisco, and of a public restaurant attached thereto, and conducted the same as a hotel and restaurant, and that the defendant during all the times mentioned in the complaint was the agent of Newlands, and as such had charge of the business thereof and direction of the servants therein; that immediately prior to November 1, 1889, Newlands entered into an agreement whereby plaintiff hired certain rooms in said hotel, as lodgings for himself and wife from November 1, 1889, at the monthly rent of one hundred dollars; that they were to have their meals at said restaurant, or furnished from said restaurant to their said rooms, he paying therefor the usual rates; that they entered and occupied the rooms, and in all things complied with said agreement, but that on December 5, 1889, the "defendant maliciously and with intent to oppress, annoy, and disturb plaintiff in the occupancy of his lodgings, and to force him to abandon the same, and to deprive him of the comforts and conveniences which he was then and there enjoying, and to injure him in his profession, and to degrade and belittle him in the eyes of the guests of said hotel and of his friends and of the public in general, and in fraud of said agreement, caused and procured F. G. Newlands then and there to demand that plaintiff and his wife forthwith vacate said lodgings." It is further charged that defendant maliciously caused and procured Newlands to refuse to furnish meals, etc., and to instruct the

servants to refuse their orders; and that on December 12, 1889, defendant maliciously caused and procured Newlands to threaten and attempt to forcibly eject plaintiff and his wife from said rooms, whereby his wife became ill, and he was compelled to and did employ a nurse at an expense of sixty dollars, and also to hire men to protect his wife and retain possession, etc., at a further expense of sixty dollars, and prays for twenty-five thousand one hundred and twenty dollars damages.

The action is against Thorn alone. The demurrer is that the facts stated do not constitute a cause of action against the defendant.

The broad question presented is whether an action will lie against one who, from malicious motives, but without threats, violence, fraud, falsehood, deception, or benefit to himself, induces another to violate his contract with the plaintiff. We state the question thus because it will be observed that the complaint does not state the *means* used to cause or procure Newlands to violate his contract with the plaintiff, but only that it was done "maliciously."

The general rule is that only those who are parties to, or in some manner bound by a contract, are liable for a breach of it. To this general rule there are certain exceptions, as, for example, contracts for personal services involving the relation of master and servant; and there are also other cases that are sometimes classed as exceptions, but which are not strictly so.

In Cooley on Torts, 2d ed., p. 581, it is said: "An action cannot, in general, be maintained for inducing a third person to break his contract with the plaintiff, the consequence after all being only a broken contract, for which the party to the contract may have his remedy by suing upon it. But if the third person was induced to break his contract by deception, it may be different. If, for example, one were to personate a vendee of goods, and receive and pay for them as on a sale to himself, the vendee would have his action against the vendor; but he might also pursue the party who by deceiving one had defrauded both." In the case supposed by the learned author, the gist of the action is the fraud of the defendant in personating the vendee. The fact that the only injury or damage sustained by the vendee in consequence of defendant's fraud was the loss of

the benefit he would have derived from the performance of the contract, does not at all change the character of the action. Suppose that A, knowing that B is about to bestow upon C, as a gratuity, a large amount of money or property, and A fraudulently personates C, and receives the money or property, C could have no action against B, for there was no contract relation between them; but C could have his action against A for the loss caused by his fraud. The means used to accomplish the wrong is in each case the same, showing conclusively that the fraud is the basis of the action, while the breach of the contract thus procured goes only to the question of damages; that is, how and in what manner and to what extent has the plaintiff been injured by the fraud, deceit, or other wrongful act of the defendant.

*Rice* v. *Manley,* 66 N. Y. 82; 23 Am. Rep. 30, cited by appellant, is another illustration. There the plaintiff had contracted verbally with Stebbins for the purchase of a large quantity of cheese. The defendant Manley procured a telegram to be sent to Stebbins in the name of E. Rice, falsely saying that plaintiffs did not want the cheese, and thereby induced Stebbins, who supposed E. Rice was one of the plaintiffs, to sell the cheese to Manley. Stebbins was not bound by the verbal contract, but it is found that he would have performed it but for the fraud of defendant. The action was sustained.

*Benton* v. *Pratt,* 2 Wend. 385; 20 Am. Dec. 623, also cited by appellant, was another case where a contract with the plaintiff was broken because of defendant's false representation that plaintiff had abandoned all intention of fulfilling it.

*Lally* v. *Cantwell,* 30 Mo. App. 524, also cited by appellant, was an action for loss of employment. The court, after discussing the cases involving the relation of master and servant, said: "But this case falls within another well-settled principle, which is that where the interference takes the form of false, defamatory statements—of libel or slander—an action will lie for interference with a relation beneficial to the plaintiff, although the relation did not rest in contract, and although the breach of it by the party who was procured to break it was not actionable."

The cases are too numerous to be cited or reviewed where

interference with business or contract relations, through acts of violence, nuisance, threats, deceit, fraud, libel, or slander, have been redressed, both in England and in this country. Most of the cases cited by appellant which do not involve the relation of master and servant, will be found of the character above mentioned, though in many of both classes will be found expressions which more or less directly support the proposition for which appellant contends.

Cases involving the relation of master and servant, though that relation is now created solely by contract, seem to stand upon different grounds from contracts not involving that relation. Section 49 of the Civil Code, entitled "Protection to Personal Relations," is as follows: "The rights of personal relation forbid: 1. The abduction of a husband from his wife, or of a parent from his child. 2. The abduction of a wife from her husband, or of a child from a parent or guardian entitled to its custody, or of a servant from his master. 3. The seduction of a wife, daughter, orphan sister, or servant. 4. Any injury to a servant which affects his ability to serve his master."

In this state, at least, no analogy favorable to appellant can be drawn from cases involving what the code itself declares to be "a personal relation" existing between master and servant. The code does not distinguish between different means which may be employed to disturb or destroy any of these relations, for it is the direct interference with the *relation* which is forbidden, whether the relation be one founded in natural right, as parent and child, or created by the law, as guardian and ward, or by personal contract, as between master and servant, and therefore does not depend upon the mode or means in or by which the relation may be created. It is not the mere procuring of one party to a contract to break his contract, but it is the taking away from or depriving the master of the *subject* of the contract, or that which the master contracted for, viz., the *services* of the servant.

The facts alleged in the complaint do not bring the case within the principle governing cases involving the relation of master and servant, nor of those other cases where a contract is procured to be broken by fraud, deceit, slander, or other actionable wrong, as in *Rice* v. *Manley,* and other cases above noticed.

It is conceded by appellant, and it is unquestionably true, that "one may advise a friend in all honesty, and without ill-will to the other contracting party, to abide the risks of breaking an onerous or mischievous contract, rather than those of performing it." In *Bowen* v. *Hall*, Law R. 6 Q. B. D. 338, Brett, L. J., said: "Merely to persuade a person to break his contract may not be wrongful in law or fact." This being true, will the fact that the advice or persuasion proceeds from malicious motives create a liability where the same advice or persuasion, if given from good motives, would not?

In considering this question the distinction between civil and criminal proceedings must not be overlooked.

In the dissenting opinion of Lord Coleridge, C. J., in *Bowen* v. *Hall*, Law R. 6 Q. B. D. 343, the question above presented is answered thus: "It is, I believe, also admitted, except by Sir William Erle, whom I think no one has ever followed, that if a man endeavors to persuade another to break his contract and succeeds in his endeavor, yet if he does this without what the law calls 'malice,' the damage which results, however great, is not in itself a cause of action, I mean, of course, a cause of action against him; but if the damage which is not in itself actionable, be joined to a motive which is not in itself actionable, the two together form a cause of action. This seems a strange conclusion. . . . . I do not know, except in the case of *Lumley* v. *Gye*, 2 El. & B. 216, that it has ever been held that the same person for doing the same thing under the same circumstances, with the same result, is actionable or not actionable according to whether his inward motive was selfish or unselfish for what he did. I think the inquiries to which this view of the law would lead are dangerous and inexpedient inquiries for courts of justice; judges are not very fit for them, and juries are very unfit."

It is a truism of the law that an act which does not amount to a legal injury cannot be actionable because it is done with a bad intent; that what one has a right to do another cannot complain of. It is conceded that one may lawfully persuade or procure another to break his contract with a third person, "if it be done from good motives." We think the qualification has no place in the proposition. If it is right, and the *means*

used to procure the breach are right, the motive cannot make it a wrong any more than a good motive would justify fraud, deceit, slander or violence to effect the same purpose. Suppose A, by fraudulent representations, induces B to sell him a large quantity of goods upon credit, intending to defraud B of the entire value of the goods. C, knowing that the representations are false, and not caring whether B shall lose his goods or not, but of unmixed malice and ill-will toward A, procures B to refuse to deliver the goods by truthfully informing B of the falsity of the representations made by A, will it be said that C. is liable in an action brought by A? In Cooley on Torts, 2d ed., p. 832, the learned author says: "Bad motive by itself, then, is no tort. Malicious motives make a bad act worse, but they can not make that a wrong which in its own essence is lawful. When in legal pleadings the defendant is charged with having wrongfully done the act complained of, the words are only words of vituperation, and amount to nothing unless a cause of action is otherwise alleged." Again the same author, at page 836, says: "Motive generally becomes important only when the damages for a wrong are to be estimated. It then comes in as an element of mitigation or aggravation, and is of the highest importance."

That the mere fact that one induces another to break a contract with a third person does not give a right of action, seems to have been directly decided in *McCann* v. *Wolff*, 28 Mo. App. 447, cited by appellant. The petition alleged that "by some means unknown to plaintiff" the defendant induced a third person to recede from a contract whereby the plaintiff lost commissions. The court said: "The demurrer was properly sustained. The petition charges neither malice nor fraud on defendant's part, and in the absence of both an action of this kind is not maintainable."

*Lumley* v. *Gye*, 2 El. & B. 216; *Bowen* v. *Hall*, Law R. 6 Q. B. D. 333, and *Walker* v. *Cronin*, 107 Mass. 555, are cited and largely relied upon by appellant. In *Lumley* v. *Gye*, plaintiff, the proprietor of a theater, employed Miss Wagner to sing in his theater for a specified time. Defendant, knowing the premises, and maliciously intending to injure the plaintiff, enticed and procured Wagner to refuse to perform, by means

of which enticement and procurement she wrongfully refused to perform, etc.  Defendant demurred to the declaration.  The court held that the relation of master and servant existed, and the decision was placed upon that ground; Crompton, J., saying, however, that he did not wish to be considered as deciding "or as saying that in no case except that of master and servant is an action maintainable for *maliciously* inducing another to break a contract, to the injury of the person with whom such contract has been made."  Mr. Justice Coleridge (now Lord Chief Justice of England) dissented in a long and able opinion, holding that the relation of master and servant did not exist within the intent of the statute of laborers of 23 Edw. 3, in which he said the law in relation to the seduction of servants had its origin; and as to the broader proposition argued by counsel and referred to by Crompton, J., concluded: "Merely to induce or procure a free contracting party to break his covenant, whether done *maliciously or not,* to the damage of another, for the reasons I have stated, is not actionable."

In *Bowen* v. *Hall,* Law R. 6 Q. B. D. 333, a contract for skilled labor, the case was decided in the appellate court upon the authority of *Lumley* v. *Gye,* Lord Coleridge again dissenting.  The opinions of the majority of the court go far to sustain the broad proposition contended for by the appellant here. *Lumley* v. *Gye* was declared by Lord Coleridge, in the latter case, to stand alone.  The reasoning in the dissenting opinions in those cases seems conclusive and satisfactory.

*Walker* v. *Cronin,* 107 Mass. 555, was also a case of enticement of laborers.  The question arose upon demurrer.  The court held, after stating the declaration: "This sets forth sufficiently: 1. Intentional and wilful acts.  2. Calculated to cause damage to the plaintiffs in their lawful business.  3. Done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendant, which constitutes malice; and 4. Actual damage and loss resulting."  This case does not seem to be based upon the relation of master and servant, or that of a contract for personal services, but unless it can be sustained upon that ground (a point not necessary to consider), the decision is clearly wrong.

In *Payne* v. *Railroad Co.,* 13 Lea, 507; 49 Am. Rep. 666,

plaintiff, a merchant, had a large and profitable trade with defendant's employees. Defendant circulated a notice to the effect that any of its employees who, after that date, traded with plaintiff, would be discharged. This, it is alleged, was done maliciously, whereby plaintiff was damaged. The court held that an act not unlawful, done in a manner not unlawful, though from wicked and malicious motives, and causing injury, is not actionable. That no contract existed between the merchant and the employees does not affect the principle involved. 2 Greenleaf on Evidence, section 453, defines a malicious act: "In a legal sense, any *unlawful act*, done wilfully and purposely to the injury of another, is, as against that person, malicious."

Two cases recently decided by the supreme court of Kentucky fully sustain our conclusion. *Boulier* v. *Macauley*, 15 S. W. Rep. 60, was a stronger case than *Lumley* v. *Gye*, as the dramatic performer was not only induced to violate her agreement with plaintiff, but to perform in defendant's theater instead. It was held that defendant was not liable. The other case, *Chambers* v. *Baldwin*, 15 S. W. Rep. 57, was for procuring a third party to break his contract for the sale of a crop of tobacco. The complaint was demurred to. The questions presented, as stated by the court, are: "1. Whether one party to a contract can maintain an action against a person who has maliciously advised and procured the other party to break it. 2. Whether an act lawful in itself can become actionable solely because it was done maliciously." The judgment of the court below sustaining the demurrer was affirmed.

*Jones* v. *Stanly*, 76 N. C. 355, cited by appellant, directly sustains appellant's contention, but the decision is based upon *Haskins* v. *Royster*, 70 N. C. 601; 16 Am. Rep. 780 (the only case cited), which case involved the relation of master and servant, and was decided by a divided court.

It may be questioned whether the omission to allege that Thorn knew of the contract between appellant and Newlands is not fatal to the complaint, but, as we conclude that the demurrer was properly sustained upon the principal point made, it is not necessary to consider it.

We are of the opinion that the judgment appealed from should be affirmed.

TEMPLE, C., and SEARLS, C., concurred.

For the reasons given in the foregoing opinion, the judgment appealed from is affirmed.

McFARLAND, J., DE HAVEN, J., FITZGERALD, J.