### HOPPER v. LENNEN & MITCHELL, Inc., et al.

### No. 2933-H.

District Court, S. D. California, Central Division.

Oct. 15, 1943.

Gang, Kopp & Tyre and Norman R. Tyre, all of Los Angeles, for plaintiff.

Cosgrove & O'Neil and John N. Cramer, all of Los Angeles, for defendants.

HOLLZER, District Judge.

This is a suit for damages founded upon alleged anticipatory breaches of two contracts. The matters requiring determination arise out of certain motions, interposed separately by each of the defendants, attacking the sufficiency of the complaint.

The complaint consists of four counts. While two defendants have been joined, one named Lennen & Mitchell, Inc., a New York corporation, hereinafter referred to as Lennen, and the other the Andrew Jergens Company, an Ohio corporation, hereinafter referred to as Jergens, only the acts of the former are complained of in the first count, also only the acts of the latter are complained of in the fourth count, while the acts of both defendants form the basis of the allegations of the second and third counts. The contract referred to in the second count is identical with that set forth in the first count, except that in the former Lennen is sued as agent and Jergens sued as its principal. The third count is founded upon a later, separate and distinct agreement alleged to have been entered into between plaintiff on the one hand and defendant Lennen as agent and defendant Jergens as its principal. The last count pertains to both the aforementioned contracts.

For a first cause of action plaintiff charges that about November 12, 1942, she entered into a verbal agreement with Lennen; that under the terms thereof she agreed to render her services for Lennen on the radio, to appear on a weekly radio program, advertising the products of Jergens for whom Lennen was advertising agent; that her services for Lennen would be exclusive on the radio unless the latter's written consent was first obtained; and that for such services Lennen agreed to pay her compensation as follows: $1,250 per week for the first 26 week period; $1,500 per week for the next two 26 week periods; $1,750 per week for the next two 26 week periods; $2,000 per week for the next two 26 week periods; $2,250 per week for the next two 26 week periods; and $2,500 per week for the last 26 week period. Likewise under the terms of said contract Lennen was granted the right to cancel the same, but only upon

these conditions, namely, that it notify plaintiff of such cancellation, also that such notice be given 4 weeks prior to the last broadcast of any 26 week period, and provided further that such notice be given in writing.

In said first count plaintiff further alleges that at all times she has been and is ready, able and willing to render the aforementioned services, but that Lennen has refused to perform its obligations under said contract and has repudiated the same, and that as a result of such refusal and repudiation on the part of Lennen, plaintiff has been damaged in the sum of $487,-500.

The second count in effect is a restatement of the first, with only this difference, that plaintiff charges that in entering into said agreement, Lennen acted for itself and as advertising agent for Jergens, and also that both defendants have refused to perform their obligations under said contract and have repudiated the same, and that as a result thereof, she has been damaged in the sum of $487,500.

For a third cause of action, plaintiff alleges that about November 30, 1942, she entered into a verbal agreement with Lennen and Jergens; that under the terms thereof she was employed by them to render her services on the radio in replacing Walter Winchell for the time he would be unable to make broadcasts for them, that is, a period of at least six weeks commencing December 6, 1942, and as long thereafter as he would be unable to broadcast for said defendants, and that for such services defendants would pay her at the same rate of compensation as that specified in the agreement described in the first count, to-wit, $1,250 per broadcast. She further charges that at all times she has been and is ready, able and willing to render the services called for under said later agreement, but that defendants have refused to perform their obligations thereunder and have repudiated the same, that they have refused to pay her for the six replacement broadcasts for Walter Winchell, and that as a result of such breach of contract she has been damaged in the sum of $7,500.

In the remaining count plaintiff alleges that about November 12, 1942, she entered into a verbal contract with Lennen as specified in the first count and that about November 30, 1942, she entered into another verbal contract with Lennen as specified in the third count. She further charges that after the aforementioned contractual relationships with Lennen had become established and while they were co-operating in performing their obligations thereunder, Lennen telegraphed her on December 2, 1942, to the effect that the deal for her to replace Winchell starting the following Sunday was off. It is further alleged that Lennen is the advertising agent for Jergens, that by reason thereof the latter was able to and did influence, induce and compel the former to break its contractual relationship with plaintiff; that Jergens intentionally and wrongfully interfered with the contractual rights and relations of plaintiff with Lennen; and that as a result of such interference by Jergens the verbal agreements between plaintiff and Lennen were broken and repudiated by the latter, thereby causing plaintiff to sustain damages in the amount of $495,000.

The defendants have appeared separately and each has filed a motion to dismiss the complaint, also a motion to dismiss each count thereof, and in addition a motion for a bill of particulars in respect to the fourth count. While it is clear that in the first count no cause of action is stated against Jergens, and likewise that in the fourth count no cause of action is pleaded against Lennen, nevertheless we are satisfied that under the provisions of Rule 20(a), Federal Rules of Civil Procedure, the defendants may be joined in one and the same action, assuming of course that causes of action can be stated against each of them.

While counsel have advanced several contentions both in their briefs and during the oral argument, the major ground upon which the first and second counts are attacked is that the oral agreement therein pleaded is invalid and unenforceable under the Statute of Frauds, more particularly, the provisions of Section 1624, Subd. 1 of the California Civil Code, and of Section 1973, Subd. 1 of the California Code of Civil Procedure. Many cases have been cited by respective counsel and in a few instances both sides rely upon the same decisions.

As we view the question thus presented, its determination is to be found in the correct application of the rule established by the great weight of authority and recognized in this state, the rule which points

322

out the distinction between performance on the one hand and cancellation, rescission and termination, on the other hand.

The latest California decision called to our attention, dealing with this subject, is entitled Sessions v. Southern Calif. Edison Co., 47 Cal.App.2d 611, 118 P.2d 935, 938. In the course of its opinion the court there declared:

"The parties devote the major portion of their briefs to a discussion as to whether the oral agreement is or is not within the statute of frauds, and so we shall first discuss the applicability of the statute. Defendant company contends that the oral agreement alleged to have been made in 1930 between plaintiff and its assistant manager is invalid and unenforceable against it, as its promise made through Lewis, if it be bound thereby, is a promise which falls within that particular category of the statute of frauds which requires a writing where the promise 'by its terms is not to be performed within a year from the making thereof'. Civ.Code § 1624. In view of the contention it is important to observe that the only oral contracts of the character here involved which are within the statute are those which cannot be performed within a year of their making. Hollywood Motion Picture Equipment v. Furer, 16 Cal.2d 184, 105 P.2d 299; Williston on Contracts, Rev.Ed., Sec. 495; Restat., Contracts, Sec. 198. The basic test for determining whether the oral contract is within or without the statute lies wholly with the terms of the oral contract. Brock v. Button, 187 Wash. 27, 59 P.2d 761. * * * As plaintiff states defendant's promise, it was to pay him a certain sum until he became of pension age (i. e. for six years) and then to pay him a pension.

"Plaintiff argues that under the contract as he states it, it does not fall within the statute. To sustain his position he relies on the principle that a promise of performance during the life of a specified person is not within the statute, as the death of the person may occur within the year. The difficulty with the plaintiff's position here, and throughout his brief, is that he fails to observe the distinction between performing a contract and being discharged from liability under it. See Williston on Contracts, Rev.Ed., Sec. 496. Plaintiff leans heavily on Weatherford, Mineral Wells & N. W. R. Co. v. Wood, 88 Tex. 191, 30 S.W. 859, 28 L.R.A. 526, which held that a promise to give an annual pass for ten years was not within the statute, as the recipient might die within the year and so the promise might be fulfilled within the year. It is enough to say of that case that it has not been followed outside its jurisdiction and it has been criticized. 2 Williston on Contracts, Sec. 496, note 2.

"It is self-evident that the contract in this case was within the statute of frauds."

Section 198, Restatement Contracts, cited with approval in the case from which we have just quoted, defines the rule as follows: "Where *any* of the promises in a bilateral contract cannot be *fully* performed within a year from the time of the formation of the contract, *all* promises in the contract are within Class V of sec. 178, unless and until one party to such a contract *completely* performs what he has promised. When there has been such complete performance none of the promises in the contract is within Class V." (Italics ours.)

Comment c to the above section states: "A distinction must be taken between promises which can be 'fully performed' within a year and promises which though they cannot be 'fully performed' within that time may be excused within it by the happening of some event. The former class is not within Class V; the latter class is."

Turning to the pertinent portion of section 178, Restatement Contracts, we find the rule thus expressed:

"The following classes of informal contracts are by statute unenforceable unless there is a written memorandum thereof signed by the *party against whom enforcement of the contract is sought* or by some person thereunto authorized by him:

"Class V. Bilateral contracts, so long as they are not fully performed by either party, which are not capable of performance within a year from the time of their formation." (Italics ours.)

As stated by the Supreme Court of Rhode Island in Wagniere v. Dunnell, 29 R.I. 580, 73 A. 309, at page 310, 17 Ann.Cas. 205: "It is established by the great weight of authority that a contract for a definite term longer than a year is *not excluded from the operation of the statute of frauds because it contains a provision enabling either party to put an end to the contract within a year:* the reasoning of the courts being that *the rescission of a contract is not the performance of it.* (Citing many cases and

text.) In Dobson v. Collis [1 Hurl. & N. 81], supra, the plaintiff's case was that it had been agreed between him and the defendants that he should serve the defendants and be retained by them in the capacity of a traveler until the 1st day of September, 1855, and for a year thereafter, unless the said employment were determined by three months' notice given by plaintiff or defendants, respectively; that the plaintiff had entered into service of the defendants, etc., but had been dismissed by the defendants before September 1, 1855. The contract was oral, and was held to be within the statute of frauds as a contract not to be performed within a year, although it was defeasible within a year. Pollock, C. B., says: 'A contract which by its general terms is not to be performed within the year is *not taken out of the statute because it may be defeated on a given event.* * * * A lease for five years, subject to a defeasance on the happening of a certain event, does not cease to be a lease for five years because it may be defeated at the end of the first year.'" (Italics ours.)

A study of the cases cited by counsel for the respective parties herein convinces us that the law of California is substantially in accord with the rule announced in the above quoted provisions from Restatement Contracts and in the cases to which we have made reference. Applying that doctrine to the allegations of the first and second counts of the complaint, it is clear that the agreement therein set forth, and which plaintiff seeks to enforce against one or both of the defendants, is a bi-lateral contract. It is also evident that by its terms said contract provided that at least one of the defendants would be entitled to plaintiff's services, in other words, that plaintiff became obligated to render her services, for a period of five years; also that she would become entitled to compensation for her services at rates increasing periodically during said five year period; and further that one or both of the defendants become obligated to accept her services for said period, unless and until defendant Lennen fulfilled certain conditions entitling it to cancel or terminate said contract. Those conditions were that Lennen give notice of cancellation to plaintiff, also that such notice be in writing, and further that it be given 4 weeks prior to plaintiff's last broadcast of any 26 week period included within the agreement. So far as the complaint discloses, assuming it became bound there-by, defendant Jergens did not have the right to cancel or otherwise terminate the contract. It is equally patent that the plaintiff did not have the right to cancel or otherwise terminate the contract.

We are satisfied that an agreement embodying terms such as we have just outlined comes within the provisions of the California statute of frauds. Accordingly we conclude that the allegations of the first count and likewise the allegations of the second count fail to state a cause of action enforceable against either defendant.

We shall now give consideration to the motions directed against the third count. The ground upon which defendants have moved for a dismissal of this count is, in substance, that the verbal agreement therein set forth is too vague, indefinite, uncertain and incomplete to be enforceable. It is clear that under California law no action will lie to enforce the performance of a contract, or to recover damages for its breach, unless it be complete and certain.

The defendants contend that the verbal agreement as pleaded in the third count must be taken to be the full and complete agreement between the parties. They further assert that such questions as to when, where, at what time and for how long a period each week plaintiff was to render services on the radio, what was the nature of her services, was she to prepare her own script, and if so did Lennen or Jergens or the broadcasting company have any right of censorship, would become vitally important with respect to the terms of such a contract as the one relied upon in said count. All these matters counsel for defendants urge would be vital to a radio broadcast intended to promote the good will of the sponsor and to advertise its products. The terms of the verbal agreement thus pleaded, according to counsel, make no reference to such essential matters. Accordingly defendants insist that said agreement lacks the certainty, definiteness and completeness which are prerequisite to rendering it legally enforceable.

In reply, opposing counsel point out that in the third count plaintiff seeks recovery of compensation agreed to be paid her for six radio broadcasts which, though unrelated to the agreement set forth in the first and second causes of action, nevertheless pertained to a type of service and a program identical with those embraced within the agreement pleaded in the prior counts. In

this connection plaintiff's counsel assert that the contract sued upon is one in which plaintiff would render her services on the radio for a fixed period of time commencing on a fixed date, that it specified the program was to be a weekly one, also indicated the products to be advertised, and hence contained all of the necessary components of a valid agreement. Furthermore they point out that in the cases relied upon by opposing counsel the contracts under attack all lacked elements present in the contract set forth in the third count.

We have heretofore summarized the terms of the alleged agreement as pleaded in the third count. Without repeating what we have previously stated in that regard, it should be observed that the contract now being examined referred and bore a relationship to a specific arrangement already in existence, more particularly, a radio program then being carried on and which apparently was of the same general character as that respecting which plaintiff and defendants were contracting. Likewise, it should be noted that radio broadcasting in connection with commercial advertising has been established for many years on a nationwide scale. To what extent this has led to the creation and acceptance of certain usages and practices which, it would be fair to presume, parties contracting in this field would have in mind and would consider to be a part of any agreement entered into between them, would seem to be a matter of proof.

Section 32, Restatement Contracts, declares: "An offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain."

However, in Comment b to this section, we find the rule amplified in the following language: "Promises may be indefinite in time or in place, or in the work or things to be given in exchange for the promise. In dealing with such cases, the law endeavors to give a sufficiently clear meaning to offers and promises where the parties intended to enter into a bargain, but in some cases this is impossible."

Illustration number 3 of this same rule is thus expressed in the text: "A promises B to employ him for a stated compensation and B promises A to serve therefor so long as B is able to do the work, or as long as a specified business is carried on. These promises create contracts, as a method is provided for determining the length of the engagement."

Illustration number 7 of the same rule is stated as follows: "A promises B to execute a conveyance in fee or a lease for a year of specified land and B promises A to pay therefor. Although the terms of leases and conveyances vary, the promises are interpreted as providing for documents in the form in common local use, and are sufficiently definite to form contracts."

The same text in Section 246 recites: "Operative usages have the effect of * * * (b) adding to the agreement or manifestations of intention provisions in accordance with the usage, and not inconsistent with the agreement or manifestations of intention."

By way of comment to the foregoing, the text declares: "The principle under which provisions are annexed to written contracts by usage is the same as that which controls the admission of collateral parol agreements, but usage is sometime operative though an express agreement to the same effect would not be. The test in both cases is the practical one, whether a reasonable contracting party might enter into the written contract in question and have intended to be bound both by its express terms, and also by the terms of the usage or collateral parol agreement in question. Concrete cases seem to indicate that reasonable persons are much more likely to rely on a recognized usage to affect the otherwise natural implications of their written contracts than on collateral parol agreements."

The following illustrations, numbered 8, 10 and 11 respectively, are given in the text as examples of the above stated principles:

"8. A and B enter into a contract for a year's employment of B by A. By an operative usage such a contract may be terminated by a month's notice. That provision is part of the contract.

"10. A contracts to sell and B to buy a hundred barrels of flour at $8 a barrel. By an operative usage in contracts for the sale of flour where the contract fixes no time for the payment of the price, payment is regarded as due ten days after delivery. The meaning of B's promise is a promise to pay the price ten days after delivery of the flour.

"11. A contracts to sell and B to buy 100 barrels of mackerel. By an operative usage, sellers of mackerel, unless they expressly exclude that interpretation of their bargain, are regarded as warranting that

the fish are not below a certain size. A warranty to that effect is part of the contract."

Section 247 of the same text declares in part:

"A usage is operative upon parties to a transaction where and only where

"(c) the usage exists in such transactions and each party knows of the usage or it is generally known by persons under similar circumstances, unless either party knows or has reason to know that the other party has an intention inconsistent with the usage."

Comment b respecting the foregoing rule recites: "A party cannot be bound by usage unless he either knows or has reason to know of its existence and nature. Accordingly one who seeks either to define language or to annex a term to a contract by means of usage must show either that the other party is actually aware of the usage, or that the existence of the usage in the business to which the transaction relates is so notorious that a person of ordinary prudence in the exercise of reasonable care would be aware of it. If so notorious, actual knowledge of it is immaterial."

An additional comment, designated c, respecting this rule reads: "It is a question of fact whether a party has reason to know that the other party intends his words or other acts to be governed by a usage. The burden of establishing that such is the case is on the party so asserting. Though the question is one of fact, the existence of a usage, like other facts may be so well known that a court will take judicial cognizance of it."

The following illustrations, numbered 1, 2 and 4, respectively, appear in the text as examples of the rule last stated:

"1. A, in Washington, sends an order to B in Baltimore to be executed on the New York Exchange. Unless both A and B gave A's order a different and identical interpretation, the order is interpreted according to the usages of the New York Exchange, even though one party is ignorant of them, since he has reason to know that the other party would interpret the order in accordance with the usage.

"2. A makes an integrated contract with B by which B promises to have executed an order on the New York Stock Exchange. A and B reside in Omaha and the contract is made there. In view of the well-known fact throughout the United States that stock exchanges have special rules, the usages of the New York Stock Exchange affecting the meaning of the contract are operative.

"4. A, residing in Chicago, and B residing in South Carolina, enter into an integrated contract in Chicago for the purchase and sale there of 'ground sheep manure'. These words bear one meaning in Chicago, and a somewhat different meaning in South Carolina. A understands the meaning to be that current in Chicago, B understands the meaning to be that current in South Carolina. The meaning of the words in the contract is that current in Chicago. Since Chicago is the place of making and performing the contract, the usage there is operative."

Applying the foregoing principles, as thus amplified in Restatement Contracts, to the allegations of the third count, we are persuaded that sufficient facts are there set forth to provide a method for determining the terms of the agreement reached by them, and which will entitle the parties to offer proof respecting the circumstances and conditions under which they negotiated. In other words, the parties would be entitled to introduce evidence showing the terms commonly included in arrangements of the kind here involved, and thereby prove whether or not the promises as alleged by the pleader should be interpreted as embodying such terms. Furthermore, evidence would be admissible to prove whether or not the contracting parties entered into the arrangement pleaded, with the intention of being bound not only by its express terms, but also by the terms of some known and recognized usage or usages. Though the question is one of fact, the existence of such usage or usages, respecting the terms of contracts employing individuals to conduct radio broadcasts in connection with commercial advertising, may be so well known that the court will take judicial cognizance of it. Thus although such proof would have the effect of adding provisions to the express language of the agreement, nevertheless, so long as the same would be consistent therewith, the parties would be entitled to establish the same, and if the proof were adequate the parties would be bound thereby. We therefore hold that the motions attacking the sufficiency of the allegations of the third count should be denied.

There remains for determination the motions directed against the fourth count. The agreements of November 12, 1942, and November 30, 1942, as therein pleaded required appearances of plaintiff on a weekly program advertising the products of Jergens. It is also there alleged that Lennen was the advertising agent for the latter, and that by reason of this relationship Jergens was able to and did influence and compel Lennen to repudiate said contracts. Thus it appears upon the face of the complaint that in a broad sense Jergens had a financial interest in Lennen's business, at least to the extent that it advertised the former's products and that in any event Jergens had an economic interest in the subject matter of these two contracts.

"The theory of this cause of action," assert plaintiff's counsel in their brief, "is that Jergens induced Lennen to breach its agreements with plaintiff." Further discussing this same point counsel state: "The case of Imperial Ice Co. v. Rossier, 1941, 18 Cal.2d 33, 112 P.2d 631, definitely established that 'in California, therefore, an action will lie for unjustifiably inducing a breach of contract.' It is sufficient to justify the allegations under this cause of action to state that they were directly based upon the most recent statement of the California courts on this subject in Remillard-Dandini Co. v. Dandini, September, 1941, 46 Cal.App.2d 678, 116 P.2d 641."

In the last cited case the complaint charged that defendant [116 P.2d 642] " 'called upon a number of the creditors of plaintiff and sought to and did induce such creditors of plaintiff to break the contractural relationships which existed between such creditors and plaintiff, all of which was done for the purpose and with the intention of bringing about the destruction and failure of plaintiff as a business and going concern'. Also 'That by reason of the foregoing acts, statements and conduct of defendants, plaintiff has sustained damage in the following manner and amounts:. That by reason of the interference by defendants in the relationships between plaintiff and its creditors, materials, supplies and services which had been contracted for by plaintiff were not delivered or supplied by such creditors and suppliers in accordance with the terms which had originally been arranged between such creditors and suppliers and plaintiff, and as a direct result of which plaintiff's plants were damaged and the operation of plaintiff's plants, and of its trucks, were curtailed,' " etc.

In the course of its opinion, reversing a judgment for defendants on the pleadings, the court in that case declared: "That a third party's *unjustifiable* interference with contractual relations is actionable is now the settled law in this state. This court so held in California Grape Control Board v. California Produce Corporation, 4 Cal.App. 2d 242, 40 P.2d 846. The holding was approved in Imperial Ice Company v. Rossier, 18 Cal.2d 33, 112 P.2d 631. * * * This appears to be the view expressed in Vol. 4, Restatement of the Law of Torts, section 766, where it is stated: 'Except as stated in Section 698, one who, *without a privilege to do so,* induces or otherwise purposely causes a third person not to (a) perform a contract with another, or (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby.' " (Italics ours.)

In Imperial Ice Co. v. Rossier, supra, it was alleged in the complaint that one Coker had sold his ice distributing business, inclusive of good will, and that in the agreement of sale Coker contracted not to engage in the business of selling and/or distributing ice in certain territory so long as the purchasers, or anyone deriving title to the good will of said business from said purchasers, should be engaged in a like business therein. It was further charged in the complaint that plaintiff acquired from the successor in interest of the original vendor full title to this ice distributing business, including the right to enforce the covenant not to compete; also that in violation of the contract of sale Coker had begun selling in the same territory ice supplied to him by defendants, and that the latter had induced Coker to violate his contract so that they might sell ice to him at a profit.

In the latter case the Supreme Court of California reversed the judgment of the lower court entered after sustaining without leave to amend a demurrer to the complaint. The ground for such reversal was that an action will lie for inducing a breach of contract by the use of moral, social or economic pressures, in themselves lawful, *unless there is sufficient justification for such inducement,* and the complaint there failed to show the required justification. The court there pointed out that the contract which Coker had signed gave to

plaintiff the right to sell ice in the stated territory free from competition on his part; that defendants, by virtue of their interest in the sale of ice in that territory, were in effect competing with plaintiff; that by inducing Coker to violate his contract they sought to further their own economic advantage at plaintiff's expense; and that such conduct was not justified.

However, it should be observed that in its opinion the Supreme Court of California in that decision also called attention to certain instances wherein justification for such inducement would exist, stating [18 Cal.2d 33, 112 P.2d 633]:

"In *numerous other situations, justification exists* (see Restat. Torts, secs. 766 to 774) depending upon the importance of the interest protected. The presence or absence of ill-will, sometimes referred to as 'malice', is immaterial, except as it indicates whether or not an interest is actually being protected. Boyson v. Thorn, 98 Cal. 578, 33 P. 492, 21 L.R.A. 233; Parkinson Co. v. Building Trades Council, 154 Cal. 581, 98 P. 1027, 21 L.R.A.,N.S., 550, 16 Ann.Cas. 1165; see cases cited in 84 A. L.R. 50; see Restat. Torts, sec. 766, comment M. * * * Again, if two parties have separate contracts with a third, each may resort to any legitimate means at his disposal to secure performance of his contract *even though the necessary result will be to cause a breach of the other contract.* (Citing cases.)" (Italics ours.)

In the last mentioned opinion the court, commenting upon Boyson v. Thorn, supra, said: "In California the case of Boyson v. Thorn, supra, has been considered by many as establishing the proposition that no action will lie in this state for inducing breach of contract by means which are not otherwise unlawful. In that case the manager of a hotel induced the owner of the hotel to evict plaintiffs in violation of a contract. The complaint expressly alleged the existence of malicious motives on the part of the manager. This court affirmed a judgment entered on an order which sustained a demurrer without leave to amend, stating that an act otherwise lawful was not rendered unlawful by the existence of 'malice'. It is clear that *the confidential relationship which existed between the manager of the hotel and the owner justified the manager in advising the owner to violate his contract with plaintiffs.*" (Italics ours.)

From the foregoing it thus appears that in neither of the two cases relied upon by plaintiff did any confidential or privileged relationship exist between the party sued for inducing a breach of contract and the party whom he influenced to break an agreement previously made with plaintiff. Likewise, in each of those cases the complaint failed to disclose that the party sued had any interest to protect which was involved in the contract which plaintiff claimed the defendant had caused to be broken, and which interest afforded justification to the party sued for interfering therein.

It is equally clear that the California courts when they last spoke upon this subject affirmed the rules governing the same, as expounded in Restatement of the Law of Torts, and as applied to a state of facts such as were pleaded in Boyson v. Thorn, supra.

Restatement Torts, § 767, declares:

"In determining whether there is a privilege to act in the manner stated in section 766, the following are important factors:

"(a) the nature of the actor's conduct,

* * * * * *

"(c) the relations between the parties,

"(d) the interest sought to be advanced by the actor and

"(e) the social interests in protecting the expectancy on the one hand and the actor's freedom of action on the other hand."

In the comment on above clause (a) the text recites in part:

"The nature of the actor's conduct is a chief factor in determining whether the conduct is privileged despite its harm to the other person. * * * The issue is not simply whether the actor is privileged to cause the harm, but rather whether he is privileged to cause it in the manner in which he does cause it. The propriety of the means is not, however, determined as a separate issue unrelated to the other factors. (Vol. 4, p. 64) * * * Economic pressure of various types is a common means of inducing persons not to deal with another, as when A refused to deal with B if B enters into or continues a relation with C, * * *. The question whether such pressure is proper is answered in the light of the circumstances in which it is exerted, the object sought to be accomplished by the actor, the degree of coercion involved, the extent of the harm which it

threatens, the effect upon the neutral parties drawn into the situation, the effects upon competition, and the general reasonableness and appropriateness of this pressure as a means of accomplishing the actor's objective." (Vol. 4 pp 67–68.)

In the comment on above clause (c) the text states in part: "Since, broadly speaking, the question on the issue of privilege is whether the actor's conduct was fair and reasonable under the circumstances, the relation between the parties is an important factor in determining the answer". (Vol. 4, pp. 68–69.)

Again in the comment on above clause (d) the text declares: "The correlative of the interest with which the actor interferes (see Comment c) is the interest which his conduct is intended to promote. Both are important in determining whether the conduct is privileged. And both are to be appraised in the light of the social interests which would be advanced by their protection." (Vol. 4, p. 69.)

■ We have heretofore noted that according to the facts set forth in the fourth count Jergens was the sponsor of a program broadcast over the radio. Also that such program was designed to advertise and promote the sale of Jergens products, and that Lennen was its agent engaged in arranging such program, including the employment of radio talent. From these facts it would seem to follow that a confidential relationship existed between Jergens as principal and Lennen as agent, that the alleged agreement employing plaintiff to appear upon such radio program directly affected Jergen's business, and that the latter had an economic interest to protect, since obviously that interest might be adversely affected by what plaintiff did upon such program.

■ The allegations in the fourth count to the effect that Jergens "wrongfully" induced Lennen to break the contractual relationships with plaintiff, and that the acts, etc., of Jergens constituted "unjustifiable" interference with the contractual relations existing between plaintiff and Lennen, are pure legal conclusions on the part of the pleader. Such recitals add nothing to the substance of the charge made in the fourth count.

Applying the principles expounded in the cases and in the text from which we have quoted to the facts pleaded leads us to conclude that Jergens was privileged to do the acts complained of, and hence the allegations of the fourth count fail to state facts sufficient for a cause of action, and the motions to dismiss the same should be granted.

### Minute Order

For the reasons set forth in the memorandum of conclusions this day filed it is ordered that the motions of each of the defendants to dismiss the first, second and fourth counts of the complaint be granted and that the motions to dismiss the third count be denied.