[Civ. No. 21566.   Second Dist., Div. Two.   July 27, 1956.]

ANDREW LAWLESS et al., Plaintiffs, v. THE BROTHER-HOOD OF PAINTERS, DECORATORS AND PAPER-HANGERS OF AMERICA (an Unincorporated Association) et al., Respondents; HERBERT SORRELL, Cross-complainant and Appellant; FLAMINIA CONTINI, Intervener and Appellant.

William R. Walsh for Appellants.

Alexander H. Schullman, Jack R. Berger, and Herbert S. Thatcher for Respondents.

MOORE, P. J.—Cross-complainant Sorrell, a former officer of a local union, and intervener Contini, both noteholders of that local, appeal from a judgment denying damages resulting from the allegedly wrongful discharge of the officer and the subsequent dissolution of the local by the parent international union, to wit, the Brotherhood of Painters, Decorators and Paperhangers of America, respondents, herein referred to as the "Brotherhood." Local 644 first sued the Brotherhood for declaratory relief as to its obligations by virtue of its contract with Sorrell and demanded an injunction against the Brotherhood's taking over Local 644. Thereupon, Sorrell filed his cross-complaint, Miss Contini intervened and upon the issues raised by such pleadings the cause was tried. The Brotherhood is an international labor union, an offshoot of the American Federation of Labor, and has jurisdiction over persons following the trades of painters, paperhangers and decorators. It is an unincorporated association, but it also issues charters to local unions of which Motion Picture Studio Painters Local 644, hereinafter referred to as Local 644, was one. The relationships between

the Brotherhood, the locals, and the members is governed by the constitution of the Brotherhood.

Appellant Sorrell served as business agent of Local 644 from 1937 until the dissolution of the local by the Brotherhood in January 1952. Although the office is an elective one, Sorrell performed his services also under a written contract of employment dated June 30, 1950, which was to expire June 30, 1953. In addition to the contract of employment, Sorrell held promissory notes of Local 644. The local had bene engaged in strikes in the motion picture studios for a number of years. The series of disputes put a severe strain on the financial resources of the local and rendered it unable to pay its normal operating expenses. Thus, on September 9, 1950, the local issued a promissory note for a sum in excess of $36,000 to appellant Sorrell to liquidate indebtedness allegedly already incurred. Thereafter, until the time of its dissolution, the local issued further notes to Sorrell until the sum of its obligations exceeded $43,000.

Appellant Contini is also a holder of notes of the local allegedly given to her as compensation for services rendered as an employee and officer of 644. Also, she holds notes of the local assigned to her by payees who were officers and employees of such local. However, three of the notes now held by Contini were assigned by payees who are merely creditors and not members or officers of Local 644: one for $2,440 payable to Clara A. Moeller, a secretary in the local's office; two for $4,934.75 payable to the Conference of Studio Unions whose president was appellant Sorrell. All notes are due on demand and provide for attorneys' fees in the event of a suit for collection.

In early September of 1950, the general convention of the Brotherhood was held in Detroit. Local 644 sent Sorrell as a delegate. However, acting on recommendation of the credentials committee, the convention voted that Sorrell and certain other delegates be not seated and that the general executive board of the Brotherhood be instructed to hear charges against Sorrell. The date of this resolution of the convention was September 7—just two days prior to the execution of the $36,000 note in favor of Sorrell.

The general executive board, the managing body of the Brotherhood between conventions, instructed the general secretary-treasurer to institute prosecution against Sorrell. On October 12, 1950, the general secretary-treasurer mailed to Sorrell the charges against him, which were to the effect

that he had violated sections 107(d), 107 (e), and 302 (13) of the constitution of the Brotherhood by associating with communists and subversives, thereby tending to bring the Brotherhood into disrepute. The charges contained also a direction to Sorrell to attend a trial on the charges to be held in Lafayette, Indiana, on November 16, 1950. The hearing was held and on March 15, 1951, the general executive board issued a decision suspending Sorrell for five years and render-him ineligible to hold office within the union for that period

Following the decision, Local 644 advised the general executive board of its contract of employment with Sorrell and vainly requested a reconsideration and vacation of the decision. No conciliatory step having been attempted, the local then filed the original complaint in this action. While the action was pending, charges were preferred against the local for failure to comply with the decision of the general executive board. The trial having been completed, judgment was rendered on January 7, 1952, whereby the charter of Local 644 was revoked. Thereupon, the general executive board ordered the members of 644 to clear into other locals. The physical assets of Local 644, worth approximately $250, were sold to Local 5 of the Brotherhood, and the purchase price was credited to advance dues paid by members of 644 who had gained membership in Local 5. After the dissolution of Local 644, Sorrell filed his cross-complaint in the action and Contini intervened.

Appellant Sorrell contends that his suspension from office by order of the general executive board of the Brotherhood was wrongful in that he was deprived of a fair trial by being forced to defend himself 2,000 miles from his residence, against charges which did not indicate persons, .places, or dates, and before a trial body which had prejudged him. If his suspension was wrongful, he reasons, the Brotherhood unjustifiably induced the breach of his employment contract and is liable for the salary lost as a consequence. Sorrell and Contini further contend that if the order suspending Sorrell was wrongful, the dissolution of the local followed as a proximate result thereof. Thus, they argue, the Brotherhood must also bear the responsibility for unjustifiably rendering the local unable to meet its debts on the promissory notes.

It is true that an action will lie for unjustifiably inducing a breach of contract by a party thereto. (*Imperial*

*Ice Co.* v. *Rossier,* 18 Cal.2d 33 [112 P.2d 631]; *Speegle* v. *Board of Fire Underwriters,* 29 Cal.2d 34 [172 P.2d 867]; *Augustine* v. *Trucco,* 124 Cal.App.2d 229, 244 [268 P.2d 780].) However, the inducement must be wrongful and un-privileged. ■ One who is in a confidential relationship with a party to a contract is privileged to induce the breach of that contract. (*Imperial Ice Co.* v. *Rossier, supra,* at p. 38; *Boyson* v. *Thorn,* 98 Cal. 578 [33 P. 492, 21 L.R.A. 233].) ■ Thus a servant may induce his master to breach a con-tract with a third person. (*Ibid.*) ■ An international union stands in a similar position toward one of its locals. Their relationships are close and interwoven, having common objectives and existing under the same system of internal laws and management. (*Brown* v. *Hook,* 79 Cal.App.2d 781 [180 P.2d 982].) Therefore, the Brotherhood was privileged to induce the breach of the local's contract with Sorrell. ■ Since it was privileged to cause the breach of the em-ployment contract, the Brotherhood was at liberty to dissolve the local for disobedience of the order suspending Sorrell under section 315 of the constitution of the Brotherhood. That section provides: "Any local union . . . refusing to enforce a decision of the General Executive Board, shall be suspended or have its charter revoked by the General Execu-tive Board." The Brotherhood, in effect, merely rescinded its contract with the debtor local. If the effect of that rescis-sion is to render the local unable to meet its obligations, its creditors have no complaint against the Brotherhood on that ground. Two further bases of privilege exist here. ■ If two parties have separate contracts with a third, each may resort to any legitimate means at his disposal to secure per-formance of his contract even though the necessary result will be to cause a breach of the other contract. (*Imperial Ice Co.* v. *Rossier, supra,* at p. 37.) ■ The Brotherhood was priv-ileged to insist upon its contract with the local (the consti-tution of the Brotherhood), even though such insistence ren-dered the local unable to perform its obligations to its creditors. ■ In such situations as the instant case where the activities of labor unions are in question, another priv-ilege comes into play; viz., where the inducement to the breach of a contract is ancillary to the exercise of peaceful and otherwise lawful methods directed to the purpose of attaining a legitimate labor objective, such conduct is justified and no liability attaches. (*Imperial Ice Co.* v. *Rossier, supra,*

at p. 35; *Los Angeles Pie Bakers Assn.* v. *Bakery Drivers,* 122 Cal.App.2d 237, 243 [264 P.2d 615]; 30 Cal.L.Rev. 181, 185-188.) In maintaining internal discipline, the Brotherhood was attempting to obtain a legitimate labor objective.

▮ The final question presented is whether the assertion of dominion and control over the assets of Local 644, after its dissolution, by the Brotherhood rendered the Brotherhood liable on the notes of the local, either entirely or to the extent of the assets appropriated. As between the members, the local, and the Brotherhood, control of the assets of 644, after its dissolution, was properly in the Brotherhood by section 184(b) of the constitution. That section provides that upon the revocation of the charter of the local, the general office or general president of the international shall assume control of all "books, documents, *property, and funds*" of the local "to be held in trust until such time as the local union may be reinstated or reorganized." The validity of such a provision in a contract between a voluntary association and its members has been declared in this state. (*Pizer* v. *Brown,* 133 Cal. App.2d 367 [283 P.2d 1055]; *Brown* v. *Hook, supra*; and see note, 23 A.L.R.2d 1209, 1212.) However, the holdings of those cases go no further than to adjudicate property rights in accumulated funds as between the members of the local organization and the national. Against creditors of the local, the parent organization only has a right to the *net assets* of the local after payment of proper debts. The situation is essentially analogous to a transfer without consideration by a corporation of all its assets to a successor corporation without there ever having been a statutory merger. In such a situation, an unsatisfied judgment creditor of the transferor may trace the transferor's assets in the hands of the transferee and satisfy unpaid debts to the extent of those assets. (*Blanc* v. *Paymaster Mining Co.,* 95 Cal. 524, 534 [30 P. 765, 29 Am.St.Rep. 149]; *Enos* v. *Picacho Gold Mining Co.,* 56 Cal.App.2d 765, 779 [133 P.2d 663]; Corporations, 19 C.J.S., § 1630.) Thus, by dissolving the local and assuming control of its assets, the Brotherhood assumed the responsibility of paying the just debts of the local to the extent of those assets. The Brotherhood admits that the local had no other assets than those taken over by the international. Therefore, the judgment must be and is reversed to the end that the trial court determine whether or not the notes held by appellants are bona fide obligations of Local 644 and to

apportion the $250 value of the assets of the local among the holders of valid obligations. In all other respects, the judgment is affirmed.

Fox, J., and Ashburn, J., concurred.

A petition for a rehearing was denied August 20, 1956, and the petition of appellants Herbert Sorrell and Flaminia Contini for a hearing by the Supreme Court was denied September 18, 1956.