[Civ. No. 49576. Second Dist., Div. Three. July 28, 1977.]

PASADENA UNIFIED SCHOOL DISTRICT,
Plaintiff and Appellant, v.
PASADENA FEDERATION OF TEACHERS, LOCAL 1050,
AMERICAN FEDERATION OF TEACHERS, AFL-CIO, et al.,
Defendants and Respondents.

**COUNSEL**

John H. Larson, County Counsel, and Donovan M. Main, Deputy County Counsel, for Plaintiff and Appellant.

Levy, Koszdin, Goldschmid & Sroloff and Henry R. Fenton for Defendants and Respondents.

**OPINION**

**POTTER, J.**—Plaintiff, Pasadena Unified School District, appeals from the judgment of the superior court dismissing plaintiff's action for damages, pursuant to Code of Civil Procedure section 581, subdivision 3, upon plaintiff's failure to amend within the period specified in the court's order sustaining a demurrer to the complaint.

The complaint seeks damages "for interference with contractual relations" against defendants American Federation of Teachers, Pasadena Local 1050, AFL-CIO (hereinafter Union), Saul Glickman (president of the local) and 150 Does. It alleges that the union is "an unincorporated association of certified employees of plaintiff," having "as one of its primary purposes the representation of said certificated employees in their relations with plaintiff school district as provided in the 'Winton Act' comprising Sections 13080 to 13088 of the Education Code." Existing "employment contracts between all certificated employees" and plaintiff "for the 1973-1974 school year" "called for the rendering of various instructional services to the students of plaintiff school district." These contracts "were to be performed in accordance

with California State Law and the policies, rules and regulations of the Pasadena Board of Education in the period beginning September 1, 1973, and ending June 30, 1974."

The complaint charges a conspiracy by the Union and its president "to induce the members of the [Union] and other certificated employees of the Pasadena Unified School District to breach their employment contracts with plaintiff by calling upon said certificated employees to participate in a one-day work stoppage and strike by withholding their services from plaintiff on June 4, 1974." Pursuant to the conspiracy, the defendants "advised and induced" the members of the Union and other certificated employees of plaintiff "to hold a work stoppage and strike on June 4, 1974, and thus induced them to violate state law prohibiting work stoppages and strikes by public school employees and induced them to breach their employment contracts with plaintiff school district."

Actual damage in the sum of $230,617 occasioned by the loss of "one full day of effective instruction" and expenditures caused by the strike are alleged. In addition, it is charged that the acts of defendants "were done maliciously, intentionally and deliberately for the purpose of preventing the teachers of the plaintiff school district from rendering instructional services to the students of the district on June 4, 1974, and for the purpose of disrupting the educational program required by law to be supplied by the Pasadena Unified School District." On this basis, exemplary damages in the sum of $100,000 are sought.

Defendants demurred to the complaint "on the grounds that the complaint does not state facts sufficient to constitute a cause of action...." The court ordered "Demurrer sustained per grounds in moving papers. 30 days to amend." No amendment was offered within said period.

*Contentions*

Plaintiff contends: (1) that "IT IS ILLEGAL FOR PUBLIC SCHOOL EMPLOYEES TO STRIKE IN CALIFORNIA"; (2) that enforcement of this prohibition "DOES NOT VIOLATE RESPONDENTS' CONSTITUTIONAL RIGHTS OF SPEECH OR ADVOCACY"; (3) that the complaint does not show that defendants were privileged to induce the breach of contract; and (4) that damages are recoverable by plaintiff on account of the illegal strike and the breach of contract thereby induced.

Defendants contend: (1) that "STRIKES BY PUBLIC EMPLOYEES ARE NOT ILLEGAL"; (2) that "IMPOSITION OF TORT DAMAGES WOULD VIOLATE THE UNION'S CONSTITUTIONAL RIGHTS OF FREE SPEECH"; and (3) "THE UNION WAS PRIVILEGED TO INDUCE ITS MEMBERS TO BREACH THEIR CONTRACTS WITH THE DISTRICT."

*Discussion*

■ It is unlawful for public school employees in California to strike. Enforcement of this prohibition does not violate constitutional rights of speech or advocacy of the employees or their union. The union is not privileged to induce breach of contract by calling an illegal strike; by so doing, the union incurs liability for the resulting damage.

■ It is, therefore, apparent that the complaint states a cause of action for damages and the judgment must be reversed.

■ *It is Unlawful for California Public School Employees to Strike*

There is no square holding of our Supreme Court passing upon the legality of strikes by public employees. However, in *Los Angeles Met. Transit Authority* v. *Brotherhood of Railroad Trainmen,* 54 Cal.2d 684 [8 Cal.Rptr. 1, 355 P.2d 905] (in which the Los Angeles Metropolitan Transit Authority Act was held to authorize strikes by employees of that agency) the court said (*id.* at p. 687): "In the absence of legislative authorization public employees in general do not have the right to strike (see 31 A.L.R.2d 1142, 1159-1161), . . ." Since that decision, the courts of appeal in this state have consistently held in accordance with the above dictum that strikes by public employees are unlawful. In the most recent opinion of this court, Division Five, in *Los Angeles Unified School Dist.* v. *United Teachers,* 24 Cal.App.3d 142 [100 Cal.Rptr. 806], affirmed an order granting a temporary injunction prohibiting a strike by school teachers against the school district on the ground that it was per se unlawful. In so doing, the court said (*id.* at pp. 145-146):

"As stated in defendants' argument of these issues, and as our own research confirms: 'Several [Courts of Appeal] and Superior Courts have held that the Supreme Court has ruled that in absence of legislative authorization, public employees in California do not have the right to strike . . . The [Court of Appeal for the Third District] in *Almond* v.

*County of Sacramento,* 276 Cal.App.2d 32 [80 Cal.Rptr. 518] held that public employees in the absence of legislative authority do not have the right to strike. The [Court of Appeal for the Fourth District] in *City of San Diego* v. *American Federation of State, County and Municipal Employees Local 127,* 8 Cal.App.3d 308 [87 Cal.Rptr. 258] held that the California common law rule is that public employees do not have the right to strike and there is no constitutional right for public employees to strike their public employer. The [Court of Appeal for the First District] in *Trustees of the California State Colleges* v. *Local Teachers,* 13 Cal.App.3d 863 [92 Cal.Rptr. 134] held that California follows and applies the common law rule that public employees do not have the right to strike in the absence of a statutory grant.'

"Defendants contend that '[i]n spite of the contrary decisions of the [Courts of Appeal] that have decided this question, this issue must be appealed to this [Court of Appeal] in order to allow this District to rule on this question and in order to present the question to the Supreme Courts of California and the United States.'

"We have examined the briefs of the parties which argue the issues with great thoroughness on both sides. We agree with the statements that the issues here presented have been determined adversely to the contentions of defendants in three of the five appellate districts of the Court of Appeal of this state, and in each instance the California Supreme Court has denied a petition for hearing. Thus, we can conceive of no benefit which would result from our reanalyses of the same issues which the three cited opinions have exhaustively treated, with extensive citation of authority."

Nothing has happened since to warrant reexamination of the question. The conduct of the Legislature has affirmed its intent to withhold the right to strike from public educational employees. The Winton Act, as enacted in 1965 and amended in 1970, expressly withholds applicability of "the provisions of Section 923 of the Labor Code"[1] to public school employees. (Ed. Code, § 13088.) The provisions of new chapter 10.7 of the Government Code which replaced the Winton Act, operative July 1, 1976, contain the same provision in Government Code section 3549.

---

[1]Labor Code section 923 guarantees to individual workmen the right to employ "concerted activities for the purpose of collective bargaining or other mutual aid or protection." This same language was construed in *Los Angeles Met. Transit Authority, supra,* 54 Cal.2d at pages 687-689, as including the right to strike.

At about the same time, the Legislature, in adopting new Code of Civil Procedure section 527.3, limiting the power of courts to issue injunctions in labor disputes, included a subdivision (d) as follows: "Nothing contained in this section shall be construed to alter the legal rights of public employees or their employers . . ." thereby indicating its intent to retain the existing rule making public employee strikes unlawful. (See *City and County of San Francisco* v. *Evankovich,* 69 Cal.App.3d 41, 52 [137 Cal.Rptr. 883].)

Decisions of the appellate courts of this state, subsequent to the 1972 decision of this court in *Los Angeles Unified School Dist., supra,* do not give any reason to question the continued authority of the line of cases therein cited. In *City and County of San Francisco* v. *Cooper,* 13 Cal.3d 898, 912 [120 Cal.Rptr. 707, 534 P.2d 403], our Supreme Court noted these authorities and referred to them as "a series of Court of Appeal decisions which have concluded that under the present state of California law public employees do not have the right to strike." However, the court found it unnecessary "to resolve this controversy in the present action." (*Id.*) Most recently, the question was again decided by the First District in *City and County of San Francisco* v. *Evankovich, supra,* 69 Cal.App.3d 41. In that case, an injunction restraining picketing and advocacy of a strike against the city was affirmed. After reviewing the prior Court of Appeal decisions, the court said (*id.* at p. 49): "[T]he injunction was limited to picketing and advocacy of an actual strike against the City, an unlawful objective, under the public policy of this State."

Under the circumstances, we, too, "can conceive of no benefit which would result from our reanalyses of the same issues which the . . . cited opinions have exhaustively treated, with extensive citation of authority." (*Los Angeles Unified School Dist.* v. *United Teachers, supra,* 24 Cal.App.3d at p. 146.) We find these authorities persuasive that the strike by plaintiff's employees was unlawful.

■ *The Prohibition of Public Employee Strikes Does Not Violate Free Speech*

Defendants in this case are not charged with advocating the right of plaintiff's employees to strike. To restrain such an exercise of their right of free speech would require justification under the "clear and present danger" test. (See *Dennis* v. *United States* (1951) 341 U.S. 494 [95 L.Ed.

1137, 71 S.Ct. 857]; *Yates* v. *United States* (1957) 354 U.S. 298 [1 L.Ed.2d 1356, 77 S.Ct. 1064].) However, the charge here is that the defendants engaged in concerted labor activity entailing direct inducement of an unlawful strike by public. employees. It has long been recognized that insofar as speech is involved in such activity, it is only an incidence of or means to promote the commercial activities of the union by exerting economic pressure. It is subject to restraint if either the purpose or the means used to exert such economic pressure is unlawful.

The opinion of our Supreme Court in *In re Blaney,* 30 Cal.2d 643, 648 [184 P.2d 892], defined free speech guarantees in labor disputes as follows: " 'Such conduct may be performed in the exercise of civil liberties, guaranteed by both our federal and state Constitutions.' (*In re Porterfield,* supra [28 Cal.2d 91] p. 114.) It has been indicated, however, that the protection afforded by the free speech guarantee of the right to publicize a labor dispute by picketing, boycotting or otherwise is not absolute or necessarily controlled by the clear and present danger test. (That test is the accepted one in the ordinary free speech cases. (*Thomas* v. *Collins, supra* [323 U.S. 516].)) Generally, as stated in *Thornhill* v. *Alabama, supra* [310 U.S. 88] at page 103 [84 L.Ed. 1093, at p. 1103]: 'It is true that the rights of employers and employees to conduct their economic affairs and to compete with others for a share in the products of industry are subject to modification or qualification in the interests of the society in which they exist. This is but an instance of the power of the State to set the limits of permissible contest open to industrial combatants.' And the purpose of the economic pressure and the means used to exert it must be lawful, (*Park & T. I. Corp.* v. *International etc. of Teamsters, supra*; *James* v. *Marinship Corp., supra.*) . . . ."

*In re Porterfield,* 28 Cal.2d 91, 101 [168 P.2d 706, 167 A.L.R. 675], stated the basis for this rule as follows: "The right of free speech protected by the federal and state constitutional guaranties is not an absolute right which carries with it into businesses and professions total immunity from regulation in the performance of acts as to which speech is a mere incident or means of accomplishment. It was not intended that a right to speak for the purpose of profit may be created to the derogation of the police power of state or city. The main purpose of such constitutional provisions was to prevent previous restraint upon (as had been imposed by other governments and in early times in this country), or the stifling of efforts pointing toward, enlightenment of individuals upon or concerning their rights and beliefs and the duties of their rulers. (See *Patterson* v. *Colorado* (1907), 205. U.S. 454, 462 [27 S.Ct. 556, 51

L.Ed. 879]; *Commonwealth* v. *Blanding* (1825), 3 Pick. (Mass.) 304, 313-314 [15 Am.Dec. 214].) The freedom of speech and of the press protected by the constitutional guaranties includes in the main, it has been said, freedom of expressions on political, sociological, religious, and economic subjects, not commercial activities to which speech is only an incident or means. [Citations.]"

However, as stated in *Blaney,* "The question still remains as to what purposes or what means may be declared unlawful by the Legislature or the courts without violating the provisions of the Constitution." (30 Cal.2d at p. 649.) The constitutionality of the prohibition of public employee strikes has been upheld by the same authorities which have uniformly declared such strikes unlawful. In *City of L. A.* v. *Los Angeles etc. Council,* 94 Cal.App.2d 36, 40-43 [210 P.2d 305], this court upheld the constitutionality of prior restraint upon picketing in support of an unlawful public employee strike. Applying the principle stated in *Blaney,* the court concluded that the strong public policy considerations against permitting public employees to strike justified such limitation and made injunctive relief proper.

The constitutionality of injunctive restraint against strike activities of public employees was also upheld in the face of an assertion that free speech was thereby violated in *Trustees of Cal. State Colleges* v. *Local 1352, S. F. State etc. Teachers,* 13 Cal.App.3d 863, 868 [92 Cal.Rptr. 134], and in *Los Angeles Unified School Dist.* v. *United Teachers, supra,* 24 Cal.App.3d 142, at pages 144-146. The latest decision dealing with the matter is *City and County of San Francisco* v. *Evankovich, supra,* 69 Cal.App.3d at page 49. The constitutionality of an injunction restraining picketing and advocacy of a strike against the City and County of San Francisco was upheld. The court relied in part upon its prior decision in *Trustees of Cal. State Colleges,* stating: "We think identical reasoning applies here, as the injunction was limited to picketing and advocacy of an actual strike against the City, an unlawful objective, under the public policy of this State. The unions attempt to distinguish the *S. F. State Teachers* case, as here there was no showing of a strike that was violently conducted or induced violence. However, even peaceful means of concerted action are improper and may be enjoined if the object is unlawful (*City of L. A.* v. *Los Angeles etc. Council,* 94 Cal.App.2d 36 [210 P.2d 305])." (69 Cal.App.3d at p. 49.)

■ The foregoing authorities support the constitutionality of even prior restraint upon speech advocating an illegal strike by public employees. If such prior restraint is permissible, a fortiori the restraining effect of subsequent liability for damages which plaintiff here seeks to impose does not violate defendants' free speech rights. Defendants' reliance in this connection upon *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710], and its progeny is misplaced. Those cases do recognize that there is an inhibition upon free speech produced by damage awards based on speech activity, and there is no question that the principles announced in *New York Times* extend to labor speech. Our own Supreme Court has recognized that the standard of *New York Times Co.* applies "to statements issued during labor controversies." (*Gregory* v. *McDonnell Douglas Corp.,* 17 Cal.3d 596, 600 [131 Cal.Rptr. 641, 552 P.2d 425].)

But the standard of *New York Times Co.* relates only to defamation actions. Moreover, it does not eliminate the cause of action for defamation; it merely sets limits restricting the conditions under which liability may be established. The restrictions apply specifically to particular elements of the common law tort of defamation. These elements are not elements of the tort of interference. Consequently, the restrictions imposed in *New York Times Co.* have no logical application to the tort charged in this case.

It would be inappropriate for this court to attempt to fashion limitations upon the tort of interference comparable to those imposed upon the tort of defamation by analogy to the *New York Times Co.* standard. Neither the United States Supreme Court nor our Supreme Court has shown any inclination to do so. Moreover, as will appear in a subsequent portion of this opinion, similar restrictions upon the tort of interference in labor disputes have already been recognized in the law of this state which afford labor organizations a broad privilege to interfere so long as their conduct is lawful.

*The Union Is Not Privileged to*
*Induce Breach of Contract by*
*Calling an Unlawful Strike*

■ Labor unions are privileged to induce breach of contract or to interfere with contractual relationships by engaging in lawful concerted activity. Such privilege, however, does not protect the union when either

the object or the means of the concerted action is unlawful. This rule of privilege is stated by our Supreme Court in *Imperial Ice Co.* v. *Rossier,* 18 Cal.2d 33, 35 [112 P.2d 631], as follows: "The interest of labor in improving working conditions is of sufficient social importance to justify peaceful labor tactics *otherwise lawful,* though they have the effect of inducing breaches of contracts between employer and employee or employer and customer. [Citations.]" (Italics added.)

The same rule is stated in 4 Restatement of Torts section 775, page 97, which states: "Workers are privileged intentionally to cause harm to another by concerted action if the object and the means of their concerted action are proper; they are subject to liability to the other for harm so caused if either the object or the means of their concerted action is improper."

The existence of the privilege, therefore, depends upon whether the object of and the means employed in the concerted action are lawful or unlawful. As heretofore pointed out, a strike by public employees is neither a lawful object of nor a lawful means to employ in a labor dispute.

The Union's further contention that its conduct was privileged by virtue of the "confidential relationship" between it and its members, based upon *Lawless* v. *Brotherhood of Painters,* 143 Cal.App.2d 474 [300 P.2d 159], is without merit. In *Lawless,* the local was simply an organ of the international union, with no real separate existence. The international could not, therefore, be charged with interference with itself. No such relationship exists between the union and its members who obviously have a separate existence.

*Damages Are Recoverable on Account
of an Unlawful Strike and the
Breach of Contract Thereby Induced*

■ Under the facts alleged in the complaint, damages can be awarded to plaintiff on two separate theories: (1) on the theory of tortious inducement of breach of contract; and (2) on a theory of direct liability for harm resulting from unlawful acts.

The pleadings are sufficient to allege a tortious inducement to breach the teachers' employment contract with plaintiff. Defendants' claim that

the terms of the contract are not sufficiently alleged to establish that the employees' participation in the strike was a breach thereof is untenable. The complaint clearly states that the teachers were employed as certificated employees of the school system. In *Fry* v. *Board of Education,* 17 Cal.2d 753, 760 [112 P.2d 229], our Supreme Court said: "While it is true that the relation between the Board and a teacher is that of employer and employee, and that this relationship is created by contract, the terms of that contract are to be found in the authority granted the Board by law. (*Martin* v. *Fisher,* 108 Cal.App. 34 [291 Pac. 276].) The rules and regulations of the Board, and the resolutions of the Board fixing the status of teachers, are integral parts of that contract. *The contract is contained in the statutes,* the rules and regulations of the board, the resolutions appointing plaintiffs, and the resolutions of the Board. . . ." (Italics added.)

As pointed out above, the Legislature has consistently withheld from teachers the right to strike. The obligation not to interrupt or deny services on the basis of a strike is, therefore, a term of plaintiff's contract with each of its teachers. Consequently, the allegation of the complaint that the defendants "advised and induced" plaintiff's employees to "hold a work stoppage and strike" sufficiently alleges a breach of the employment contract.

Moreover, liability can be imposed on defendants upon a theory wholly independent of tortious inducement to breach the teachers' contract with plaintiff. The conduct of an unlawful strike is itself a tort for which damages may be recovered. Our Supreme. Court so held in *Garmon* v. *San Diego Bldg. Trades Council,* 49 Cal.2d 595 [320 P.2d 473]. In affirming an award of damages against the union which called an illegal strike, the court said (*id.* at p. 606): "The law of this state imposes upon everyone the duty 'to abstain from injuring the person or property of another, or infringing upon any of his rights.' (Civ. Code, § 1708.) There is a breach of such legal duty when one who performs an act not authorized by law infringes upon a right another is entitled to enjoy, or causes a substantial material loss to another. That breach constitutes the commission of a tort, under the laws of this state, for which an action in damages will lie. In *Loup* v. *California S. R. R. Co.,* 63 Cal. 97, it was said at page 99: 'A person commits a tort, and renders himself liable to an action for damages, who commits some act not authorized by law, or who omits to do something which he ought to do by law, and by such an act or omission either infringes some absolute right, to the enjoyment of

which another is entitled, or causes to such other some substantial loss of money, health, or material comfort.' (See also 24 Cal.Jur. 589.) It is further established in this state that by an unlawful and unauthorized labor practice an employer who is damaged thereby may recover damages in a tort action. In *James* v. *Marinship Corp.,* 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900], it was said that the 'object of concerted labor activity must be proper and that it must be sought by lawful means, otherwise the persons injured . . . may obtain damages . . . (Citations.)' (See also *Park & T. I. Corp.* v. *International Brotherhood of Teamsters,* 27 Cal.2d 599, 603 [165 P.2d 891, 162 A.L.R. 1426].)"

Though the decision in *Garmon* was reversed (*San Diego Bldg. Trades Council* v. *Garmon* (1959) 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773]), the basis of the reversal was the exclusive jurisdiction of the National Labor Relations Board in respect of employers in interstate commerce. The reversal, therefore, has no effect upon the validity of our Supreme Court's statement as a pronouncement of California law applicable to employment not subject to National Labor Relations Board jurisdiction.[2] Defendants have not claimed that plaintiff is involved in interstate commerce, and it is patent that it is not. The complaint, therefore, states facts which, if proven, would establish a right to recover damages for the tort of unlawful labor practice. The union cannot avoid liability for this tort by claiming it did not itself strike. The complaint alleges directly that it induced and encouraged such unlawful labor practice. ■ All those who aid and abet in the commission of an intentional tort are equally liable with the party directly committing it. The rule in this respect is stated in 4 Restatement of Torts section 876, page 435, the pertinent part of which reads:

"For harm resulting to a third person· from the tortious conduct of another, a person is liable if he (a) orders or induces such conduct, knowing of the conditions under which the act is done or intending the consequences which ensue, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, . . ." The rule as stated in the Restatement is clearly the law of California. (*Loeb* v. *Kimmerle,* 215 Cal. 143, 150 [9 P.2d 199].)

---

[2]Other aspects of the holding in *Garmon,* not here relevant, were overruled in *Petri Cleaners, Inc.* v. *Automotive Employees, etc., Local No. 88,* 53 Cal.2d 455, 475 [2 Cal.Rptr. 470, 349 P.2d 76].

In their petition for rehearing, defendants have urged, for the first time, that the newly created Educational Employment Relations Board (see Gov. Code, §§ 3541, 3541.3, operative Jan. 1, 1976) has exclusive jurisdiction over illegal strikes as "unfair practices." (Cf. *Garmon, supra.*) It is unnecessary to decide this question inasmuch as section 3541.5 clearly defers the exclusive jurisdiction of the board until July 1, 1976, its effective date, and withholds jurisdiction "in respect of any charge based upon an alleged unfair practice occurring more than six months prior to the filing of the charge." The strike in this case occurred more than six months prior (June 4, 1974) to the effective date of the board's jurisdiction. The board, therefore, had no jurisdiction over it. We leave for future adjudication the question whether illegal strikes by educational employees after the effective date of these enactments are "unfair practices" within the exclusive jurisdiction of the board.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

Allport, Acting P. J., and Cobey, J., concurred.

A petition for a rehearing was denied August 18, 1977, and the opinion was modified to read as printed above. Respondents' petition for a hearing by the Supreme Court was denied November 25, 1977.