STATE of Missouri ex inf. John C. DANFORTH, Plaintiff-Respondent,

v.

KANSAS CITY FIREFIGHTERS LOCAL NO. 42, A.F.L.–C.I.O., and Frank P. Shortino, John Germann, Robert Palmer, Jim Stevenin, Robert Ross, Michael J. Walsh, Ray Elder, Gene Scott, Berry Garrison, Al Bradshaw, Harold Knabe and Mike Lynch, Defendants-Appellants.

No. KCD 29244.

Missouri Court of Appeals, Western District.

June 11, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 12, 1979.

Application to Transfer Denied Sept. 11, 1979.

Lawrence F. Gepford, James L. Lyons, Albert A. Riederer, Kansas City, for defendants-appellants.

John D. Ashcroft, Atty. Gen., William F. Arnet and J. Paul Allred, Jr., Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

Before DIXON, P. J., and TURNAGE and KENNEDY, JJ.

TURNAGE, Judge.

The attorney general filed suit against Kansas City Firefighters Local No. 42, an unincorporated labor organization, and individual members, for damages resulting from a strike conducted by members of the Union in October, 1975. The trial court entered judgment for the State and against the Union and all individual members of the Union who were scheduled to work during the strike period but refused to do so in the amount of $128,782.72 and exemplary damages in the sum of $25,000. On this appeal the Union members raise the decisive issue that the State caused the National Guard to take over firefighting duties in Kansas City without expectation of payment from the Union. Reversed and remanded.

In its petition the State alleged the Firefighters Local conducted a strike or work stoppage in violation of the statutory and common law and in furtherance thereof the members of the Union refused to respond to fire alarms or calls and refused to perform any other duties. It was alleged the Union members established picket lines and engaged in acts of sabotage of the facilities and equipment of the City and harassed members of the National Guard, Kansas City Police and volunteers who responded to fire calls. The petition alleged these acts by the Union members created a hazard to the public health and safety and to safeguard the people and property of Kansas City the Governor called out the National Guard to perform the duties and responsibilities of the Union members. The petition set forth in detail the numerous duties performed by the Guard and the number of guardsmen involved. The petition alleged that as a direct and proximate result of the illegal acts of the Union members, the State incurred expenses approximated at $150,-000. The petition further alleged the acts of the Union members were intentional, willful, malicious and in wanton disregard of the statutory and common law of Missouri, and, as a result, the State was entitled to punitive damages in the sum of $300,000.

The prayer of the petition was for actual and punitive damages and costs.

■ The petition was filed on October 6, 1975. The case was later submitted on stipulations of fact which agreed the Union members did conduct a strike from 7:00 A.M. on October 3, 1975, to 7:00 A.M. on October 7, 1975. The stipulation further agreed as to the cost to the State for the National Guard to be on duty for the period of the strike, which was the amount of actual damages found by the trial court. In addition, numerous depositions and exhibits were admitted by agreement. In fact, there is no disagreement as to the facts, the debate on this appeal being limited to the law. Both parties have stated in their briefs that the theory of the State utilized in the trial court was one of quasi-contract, and upon that theory alone they have joined issue here. Although quasi-contract is an action ex contractu, 17 C.J.S. Contracts § 6, p. 567, neither party comments on the distinctive tort ring sounded by the State's petition, as emphasized by its allegation and prayer for punitive damages. Although tortious conduct on the part of the Union members was alleged, the petition did not plead facts from which the breach of a contractual duty could be inferred with the tortious conduct being an independent willful act in connection therewith as would be necessary to recover punitive damages in an action based on the contract. *Wallick v. First State Bank of Farmington*, 532 S.W.2d 520, 524[7, 8] (Mo.App.1976). The trial court in its findings of fact and conclusions of law followed the format of the petition and found the strike to be illegal but found there was insufficient evidence to show the Union members committed any acts of sabotage in connection therewith. The court awarded the State its actual expenses incurred, including the cost of feeding the Guardsmen. The court awarded punitive damages on a finding that the Union willfully and intentionally violated the law and its obligation to the City and thereby acted in reckless disregard for the safety and welfare of the people of Kansas City. The parties agree the theory followed by the State in the trial court and on appeal

is quasi-contract without discussion of the inconsistent notes struck by the petition and the findings of fact and conclusions of law with a contract theory. This court will review the case on the same theory on which it was submitted to the trial court and is presented here. *Young v. Greene County*, 342 Mo. 1105, 119 S.W.2d 369, 374[8] (1938).

The State contends it is entitled to recover under a class of quasi-contractual obligations known in the Roman law as *Negotiorum Gestio*. This theory is discussed by Professor Woodward in the Law of *Quasi Contracts*, Part 2, p. 308 (1913). Under this theory Professor Woodward at page 310 discusses dutiful intervention in another's affairs to the latter's advantage. These are called acts of beneficial intervention which may result in quasi-contractual obligation in the following classes: (1) the discharge of another's legal obligation, and (2) the preservation of another's life or property. The discharge of another's obligation may be regarded as dutiful if it appears (a) the obligation is of such a nature that actual and prompt performance of it is of great public concern; (b) a person upon whom the obligation rests has failed or refused, with knowledge of the facts, to perform it; or that it reasonably appears that it is impossible for him to perform it; and (c) he who intervenes is under the circumstances an appropriate person. The illustrations discussed by Professor Woodward under this doctrine involve the failure of a man to support his wife, a parent failing to secure needed medical attention for a child and the payment of burial expenses by those not legally required to do so.

The State contends it meets all of the requirements set forth by Professor Woodward and is, therefore, entitled to recover from the Union members the costs incurred by the State in performing the duties imposed upon the Union members. It is not necessary to decide, even ignoring all questions heretofore mentioned regarding the contents of the petition and the theory thereof, whether the State has satisfied all of the requirements; the Union members

contend the law requires the State to pay the expenses of the Guard, and, therefore, it necessarily follows the State failed to show it caused the National Guard to perform firefighting services with an expectation of recovering its costs from the Union members. The requirement that the State show it performed the duties of the Union members in fighting fires and related duties with expectation of pay is recognized by Professor Woodward as a part of the doctrine of *Negotiorum Gestio* at ¶ 199, pp. 313–314. It is there stated that in most instances of dutiful intervention, the benefit is conferred—that is, the duty of another is performed—without expectation of compensation, and, therefore, there is no injustice for a party to retain the benefit without payment.

It was stipulated that the General Assembly appropriated $500,000 for the payment of expenses of the National Guard incident to emergency duties performed by the Guard for the fiscal year in which the strike occurred and that all expenses incurred by the National Guard in serving in Kansas City during the strike were paid from this appropriation. The stipulation contains a copy of the executive order by which the Governor called out the National Guard and which concluded with the statement, "The Adjutant General of the State of Missouri will provide all transportation and services and furnish all rations and other supplies essential to the militia for the proper performance of duties hereby authorized and ordered."

■■ The doctrine of *Negotiorum Gestio* espoused by the State is a sub-class within the law of quasi-contracts. The appropriate action to recover on a theory of quasi-contract is quantum meruit as one of the common counts in general assumpsit and the law of quantum meruit is well settled in Missouri. *Rolla Lumber Company v. Evans,* 482 S.W.2d 519, 522[4] (Mo. App.1972). One of the requirements for recovery under a theory of quasi-contract in quantum meruit is stated in *Kolb v. Howard Corporation,* 219 S.W.2d 856, 858–9[1, 2] (Mo.App.1949):

The evidence must of course disclose that the one who rendered the services did so under circumstances warranting a proper inference that he expected the recipient of the services to pay for them, and that the latter, in accepting the benefit of the services, was or should have been aware that they were being performed with that expectation.

The requirement that the services must be rendered with an expectation of payment is also stated in 66 Am.Jur.2d, Restitution and Implied Contracts, ¶ 26, pp. 970, 971, and Keener on Quasi-Contracts, Chapter VII, p. 341.

■ The National Guard was called to duty by the Governor pursuant to the authority vested in him by § 41.480, RSMo 1969. There is no provision in that section or in the appropriation which contemplates recovery by the State of the cost for deployment of the Guard. Further, the Governor's proclamation specifically provided the expenses were to be paid by the Adjutant General, which means the State. All of the evidence negatives any intent on the part of the State to charge the Union members the expense of performing the firemen's duty during the strike. In the absence of pleading and proof of this essential element in an action in quantum meruit to enforce a quasi-contract, the State's cause of action must fail. This is not to suggest the State met all of the other requirements to recover under quantum meruit, but it is unnecessary to consider other elements when the essential element discussed is missing.

■ The Union members also contend the court erred in certifying this case as a class action under Rule 52.08. Pursuant to a request by the State, the court did enter an order finding this action was a proper class action under Rule 52.08 and the court ordered notice mailed to each member of the Union and that a notice be printed in a newspaper. No objection was made by the Union or any members concerning the certification of this case as a class action until this appeal. In its conclusions of law the trial court found this action was properly brought under Rule 52.10. That rule provides for actions brought by or against

members of an unincorporated association as a class by naming certain members as representative parties. Rule 52.10 further provides that the court may make appropriate orders for notice to individuals corresponding to the notice to class members described in Rule 52.08(d). This court held in *Burki v. Wiggs,* 550 S.W.2d 933, 935[4] (Mo.App.1977) that in an action involving an unincorporated association, the court under Rule 52.10 had the discretion to order notice given to each member of the association. Thus, the giving of notice to the members in this action did not convert this from an action under Rule 52.10 to a class action under Rule 52.08. The Union members do not contend those persons named as defendants and as representatives of the Union would not or did not properly represent the Union members. The court was correct in finding this was a proper action against the Union as an unincorporated association under Rule 52.10 and the notice given to the members under the optional authority vested in the court did not deprive the court of power to find the action to come under Rule 52.08. *State ex rel. Niess v. Junkins,* 572 S.W.2d 468, 470 (Mo. banc 1978).

Rule 84.14 provides that unless justice *otherwise requires, the court shall dispose* finally of a case. It is well settled that, " 'The furtherance of justice requires that a case should not be reversed without remanding unless the appellate court is convinced that the facts are such that a recovery cannot be had; and even though the plaintiff fails to substantiate the theory upon which his case was tried, if he nevertheless shows a state of facts which might entitle him to recover if his case were brought upon a proper theory, the judgment will not be reversed outright, but instead, in the exercise of a sound judicial discretion, the case will be remanded to give him the opportunity to amend his petition, if so advised, so as to state a case upon the theory which his evidence discloses.' " *East v. McMenamy,* Mo., 266 S.W.2d 728, 732; *Yarrington v. Lininger,* Mo., 327 S.W.2d 104, 111 . . . *Nelson v. Grice,* 411 S.W.2d 117, 126[5, 6] (Mo.1967).

Although the State has failed to prevail on its contract theory, it might be that a tort theory would be available. In *Pasadena Unified School District v. Pasadena Federation of Teachers,* 72 Cal.App.3d 100, 140 Cal.Rptr. 41, 48[15] (Cal.App.1977) the court held the conduct of an unlawful strike is itself a tort for which damages may be recovered. See also Annot. 84 A.L. R.3d 336 (1978). There can be no doubt that a strike by public employees in Missouri is illegal. *St. Louis Teachers Association v. Board of Education, Etc.,* 544 S.W.2d 573, 575[1] (Mo. banc 1976), and it may be that the State could show a state of facts which would entitle it to relief under a tort theory. Of course, this court is not deciding at this time whether or not the State can recover on a tort theory, but is deciding that in the furtherance of justice and in the exercise of a sound judicial discretion, this case should not be reversed outright but should be remanded to give the State opportunity, if it so desires, to proceed on another theory.

The judgment is reversed and the cause is remanded.

All concur.