**MICHIGAN TEAMSTERS JOINT COUNCIL NO. 43, a labor organization, Plaintiff,**

v.

**William E. BUFALINO, Sr., et al., Defendants.**

**Civ. A. No. 82–74597.**

United States District Court, E.D. Michigan, S.D.

July 29, 1985.

Robert E. Day, Bloomfield Hills, Mich., for plaintiff.

William E. Bufalino Sr., St. Clair Shores, Mich., in pro. per.

Kenneth E. Kinkel, Birmingham, Mich., for defendant Detroit Teamsters Temple Ass'n.

Mallin, Kushner & Chupack, Birmingham, Mich., Susan A. Harris, Asst. Atty. Gen., S. Allen Early Jr., Mary Richman, Detroit, Mich., Gerry M. Miller, Milwaukee, Wis., Charles S. Stroad, Dist. Counsel, IRS, Roy C. Hayes, Detroit, Mich., for defendants.

## MEMORANDUM OPINION

SUHRHEINRICH, District Judge.

This matter is before the Court on plaintiff's renewed motion for partial summary judgment, or in the alternative, Judgment on the pleadings. The Court heard oral argument on plaintiff's original motion on May 14, 1985, denying that motion without prejudice and affording plaintiff an opportunity to further address certain issues. Through the present motion plaintiff seeks a certification of its proposed interpleader, pursuant to Fed.R.Civ.P. 22. *See also* 7 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1714 (1972 and Supp. 1985).

### I.

This matter has grown out of the revocation of Teamster Local 985's charter on April 19, 1982 by its parent organization the International Brotherhood of Teamsters (IBT). At that time, the Local had amassed debts in excess of $150,000 including approximately $107,000 in delinquent dues owed to plaintiff Teamster Joint Council No. 43 and affiliate Detroit Teamster Temple. Defendant Bufalino was the defunct Local's president and seeks $28,500 in back wages. Eight additional claimants seek amounts from $238 to $1,800 and five small claim holders have not answered the complaint.

Plaintiff Joint Council is a mid-level labor organization which serves Teamster Locals within the State of Michigan. The Joint Council acted as interim successor to Local 985 during the April 1982 to August 1982 time period. Subsequently, the Local 985 membership were assigned to new locals pursuant to procedures defined in the International Brotherhood of Teamsters Constitution (hereinafter referred to as Constitution). During the April 1982 to August 1982 time period, dues collected from the defunct local membership were placed in an escrow account. The plaintiff, Joint Council, served as caretaker of these funds and subsequently filed this interpleader action to invoke the Court's assistance in the disbursement of the funds. Those dues collected by the Joint Council comprise a "stake" in excess of $39,000.

### II.

In this portion of the proceeding plaintiff asks the Court to certify the interpleader as proper, enter a judgment relieving the Joint Council of any liability to any defendant (claimant) in this lawsuit either arising out of the stake or out of liability incurred

by former Local 985. Further, plaintiff seeks an injunction restraining defendants from prosecuting individual actions to recover portions of the stake, and requiring claimholders to interplead their claims arising out of former Local 985's liabilities. The requested relief has been labeled as the "first stage" of an interpleader action pursuant to Fed.R.Civ.P. 22.

> Interpleader is a remedy involving two steps or stages. During the first the court determines the right of the party invoking the remedy to compel the claimants to litigate their claims to the stake in one proceeding.... The second stage of the interpleader involves the determination of the respective rights of the claimants to the stake....

7 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1714 (1972).

■ In granting the relief requested by the plaintiff, the Court must determine that there is a legitimate threat of multiple lawsuits directed against a single fund. See 7 C. Wright & A. Miller, *supra,* at § 1704. The Court's concern in this action is the appropriateness of the fund itself as a proper source for payment of Local 985's debts. Plaintiff's position, essentially, is that the fund is properly applied to Local 985's debts and further, that the fund represents the only assets of the Local available to satisfy Local 985's debts. These issues are now examined by the Court.

### III.

■ A threshold issue presented by the parties is whom or what entity is entitled to dues monies collected by the Joint Council after Local 985's charter revocation. The IBT Constitution provides guidance in this regard, clearly contemplating that the International shall succeed to the assets of the Local Union.

> In the event of succession, dissolution or disqualification, all properties, funds and assets, both real and person, of such Local Union or Joint Council or other subordinate body shall become the property of the International Union....

IBT Constitution, Art. XX (1981).

Thus, the International clearly succeeds to the assets of the defunct Local. In this case it appears clear that the International authorized the application of the subject interim funds collected by the Joint Council to the debt of the defunct Local. In a letter dated July 20, 1982, International General President Williams authorized the Joint Council to pay debts of Local 985 from the escrow account. (Attachment E to affidavit of Elton Shade filed January 30, 1985.)

The next issue presented by the parties is whether the dues were properly required of the membership at all in the absence of Local Union representation. The Court is persuaded that representation of the defunct Local 985 membership was provided on an interim basis by the Joint Council and contractual benefits negotiated by the Local continued during this interim period. Therefore, the Local 985 membership remained contractually bound to continue dues payments during the April 1982 to August 1982 time period. In this regard the Court notes that the membership's dues payments were required to defray the cost of negotiating and administering the collective bargaining agreement. The membership, therefore, remained bound to make payments for these services.

It also appears clear that members of a local union are also members of the International. *International Brotherhood of Teamsters v. United States,* 275 F.2d 610, 612 (4th Cir.1960), *cert. denied* 362 U.S. 975, 80 S.Ct. 1060, 4 L.Ed.2d 1011 (1961). Further, it appears that the IBT Constitution establishes that dues are a legal obligation of the membership. "Dues of members of the International Union, payable through their respective local unions shall not be less than...." IBT Constitution, Art. X, § 3(d) (emphasis supplied). *See also* IBT Constitution Art. XXVI, § 1.

The Court concludes that the membership of Local 985 continued to receive all benefits afforded under the collective bar-

gaining agreement during the April 1982 to August 1982 time period and remained contractually bound to continue making dues payments under the IBT Constitution.

The final issue which the Court must consider is whether the Joint Council as successor to Local 985 assumed responsibility for the debts of the Local. Little case law appears to exist on this precise issue, however, plaintiff has cited the Court one applicable case, *Lawless v. Brotherhood of Painters*, 143 Cal.App.2d 474, 300 P.2d 159 (1956). In *Lawless*, the approach taken by the court was similar to that suggested by the present plaintiffs. There, the court concluded that the International by assuming control over a dissolved local became liable for the just debts of the local only to the extent of the local's assets. *Lawless*, 300 P.2d at 163. Indeed, this approach is consonant with the IBT Constitution. "However, in no event shall the International Union without its consent become liable for the obligations of a subordinate body which has succeeded, disaffiliated, dissolved or been dissolved, or has been suspended, merged or has forfeited its charter." IBT Constitution, Art. X, § 13 (1981). As the *Lawless* court also noted, such an approach is analogous to a transfer by a corporation of all of its assets to a successor corporation without a merger. *Lawless*, 300 P.2d at 163. In such a situation a creditor may trace only the transferor's physical assets in the hands of the transferee. The transferee is not held fully liable for the predecessor's debts. The only apparent physical assets of Local 985 are embraced in the current stake.

### IV.

The Court concludes that the proposed stake in this action is appropriate and that interpleader under Fed.R.Civ.P. 22 is a proper method of resolving the rights of former creditors of former Teamster Local 985. Therefore, the Court has determined that:

1) The plaintiff shall be discharged of any independent liability to any defendants in this action arising out of the stake or arising out of the liabilities of former Local 985;

2) All defendants shall be enjoined from prosecuting individual actions to recover a portion of the stake or to recover on the liabilities of former Local 985;

3) All defendants shall interplead their claims arising out of said stake and said liabilities of former Local 985, framing the issues in their pleadings; and,

4) Plaintiff may assert its claim to a portion of the stake.

An appropriate order in conformance with this opinion shall be entered.