## CONWAY v. SKELLY OIL CO.
### No. 463.

Circuit Court of Appeals, Tenth Circuit.
Nov. 27, 1931.

Lawrence Mills, of Tulsa, Okl. (Mills & Cohen and R. M. Cohen, all of Tulsa, Okl., on the brief), for appellant.

Alvin F. Molony, of Tulsa, Okl. (W. P. Z. German, Robt. M. Turpin, and Geo. W. Cunningham, all of Tulsa, Okl., on the brief), for appellee.

Before COTTERAL and PHILLIPS, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge.

The court below sustained a general demurrer to plaintiff's amended petition, and, plaintiff having declined to amend further, the petition was dismissed. This ruling and action of the trial court is here for review.

The facts alleged in the petition pertinent to this review are as follows:

One S. C. Newbern was the owner of a 20-acre tract of land lying near the town of Asher in Pottawatomie county, Okl. On November 2, 1922, he gave the defendant, Skelly Oil Company, a gas and oil lease to said land, as alleged in the petition, "for the sole and only purpose of mining and operating for oil and gas, laying pipe lines and building tanks, towers, stations and structures thereon to produce same and take care of said products." This lease was duly filed for record in the office of the county clerk of said county. All persons living in and around the town of Asher had actual, as well as constructive, notice of the lease. In the early part of the year 1929, plaintiff, a real estate dealer, entered into a contract with the said Newbern to plat said land as an addition to the town of Asher with authority to sell the lots—the agreement being that plaintiff would bear all the expense of platting the land and advertising and selling the lots. $18,280 was the agreed total sale price for all the lots. Of this sum plaintiff was to receive 25 per cent. as his commission and to reimburse him for the expenses incurred in platting, advertising, and selling the lots. In the spring of 1929 plaintiff had the land platted into lots as an addition to the town of Asher, and thereafter advertised the lots for sale. It is alleged in the petition that at that time "the said town of Asher was on a boom on account of the discovery of oil in close proximity to the town, and that there was a ready sale for said lots subject to said oil and gas lease at the prices placed thereon by plaintiff and that said lots were being sold readily at said prices," prior to the alleged wrongful acts of the defendant company complained of in the petition. Following are the matters complained of as alleged in plaintiff's petition:

"6. Plaintiff further says that although the defendant well knew that the said Newbern owned said land and had the lawful right to convey fee simple title to said lots subject only to the right of Skelly Oil Company to use the same to the extent necessary to produce and market oil or gas under its lease if it should thereafter drill thereon and secure production in paying quantities and had the lawful right to contract with this plaintiff for the sale of the lots subject to said lease upon commission and that the plaintiff had expended large sums of money in advertising said sale, the said defendant was nevertheless very much opposed to the sale of said lots by this plaintiff under his contract with the said Newbern because of an imagined inconvenience to itself if it should thereafter undertake to develop said lease and formed the unlawful, malicious and wicked design and purpose to prevent the sale of said lots by this plaintiff by slandering the title and calling in question the right of possession that the said Newbern was able to give to his vendees and by intimidating intending purchasers by threats of expensive and vexatious litigation by a rich and powerful adversary.

"7. That for the purpose of carrying out said unlawful, wicked and malicious purpose and design after said sale had started and lots in said addition to the value of Four

Thousand Ninety-five ($4095.00) Dollars had been sold, although said defendant well knew that said oil and gas lease was of record in Pottawatomie County and that every purchaser of the lots was charged with notice thereof and also that plaintiff was selling said lots subject to the oil and gas lease of defendant, it caused fourteen (14) signs to be erected upon said addition surreptitiously and in the nighttime; that said signs were about six feet square and bore the following notice printed in large letters thereon:

"Notice.

"Skelly Oil Company owns oil and gas mining leases covering the West Half of Northwest Quarter and the Southeast Quarter of Northwest Quarter, Section 18—Township 6 N.—Range 4 E., Pottawatomie County, Oklahoma, dated October 26th, 1922, and November 2nd, 1922, respectively, and duly recorded in said County, and thereunder has the legal right to occupy and use said land for development and operation purposes, including drilling wells, laying pipe lines, building tanks, towers, stations, structures, gas lift plants, digging slush pits, drainage ditches, etc., thereon and maintaining same thereon and any one else attempting to use any part of the surface of said land will do so subject to said rights and at his risk. Said Company will enforce its rights in the courts if that be necessary.

"Skelly Oil Company.

"8. That the purpose of said defendant in erecting said notices upon said land was not in good faith to advise prospective purchasers of the existence of said oil and gas lease but the same was an ingenious and cunning stratagem and artifice under the guise of a lawful notice to accomplish its unlawful purpose as above set out and to mislead and deceive the public as to the rights of the lessee under said lease and by studied ambiguity and double meaning to disparage and slander the title of the said Newbern and the rights that this plaintiff could convey to purchasers from him; that the said notices were artfully designed by the said defendant, both by reason of their unnecessary multiplicity and their ambiguous phraseology to be understood to mean and imply that the Skelly Oil Company denied that plaintiff had the right to put any purchasers of lots in possession thereof, and that any person who purchased would do so at the risk of losing his money and if he undertook to occupy said lots under said purchase contract he would be involved in an expensive and vexatious litigation with the defendant. Plaintiff further says that the said notices were by the buying public construed and accepted to mean such as is herein alleged that it was the intention and purpose of the defendant company that they should be construed to mean and that the effect of the unlawful and malicious act of the said defendant as it well knew and intended, was to destroy the marketability of said lots so that plaintiff thereafter by the use of his best efforts was unable to sell any more of the lots in said addition.

"9. Plaintiff further states that had it not been for the malicious, wrongful and unlawful acts of the defendant as above stated he would have been able to sell and dispose of all of said lots and would therefore have earned and received as commission thereon, the sum of Five Thousand ($5,000.00) Dollars, all of which was lost on account of the acts of the defendant as above stated. Plaintiff further says that the defendant with respect to the matters and things above set out was guilty of fraud, malice and oppression and that he is entitled to the recovery, in addition to the actual damages, of the sum of Five Thousand ($5,000.00) Dollars as exemplary damages."

It is not clear from this pleading whether plaintiff intended his suit to be predicated upon slander of title or upon unjustifiable interference with plaintiff's business by defendant. Assuming that his contract with Newbern gave him such an interest in the land as would support an action for slander of title, and that the petition states, or attempts to state, a cause of action as such, it is not deemed necessary to consider the case from that standpoint, since the consideration of it as stating or attempting to state a cause of action for unjustifiable interference with plaintiff's business is equally conclusive of it as an action for slander of title.

At this point it should be noted that neither the physical act of placing the billboards on the premises nor the physical act of posting the notice on the billboards is complained of. The thing complained of is the language of the notice—the assertions and threats contained in the notice. It will be noted too that it is not charged that any statement contained in the notice is untrue, except as the pleader attributes a sinister meaning to the language used.

On comparison of the language of the notice with the allegations of the petition we find the following parallels:

Notice. "Skelly Oil Company owns oil and gas mining leases covering the West Half of Northwest Quarter and the Southeast Quarter of Northwest Quarter, Section 18—Township 6 No.—Range 4 E., Pottawatomie County, Oklahoma, dated October 26th, 1922, and November 2nd, 1922, respectively, and duly recorded in said County."

Petition. "That at the time said addition was placed upon the market the said land was subject to the oil and gas lease executed on November 2, 1922, and oil rights under said lease were owned by the defendant Skelly Oil Company."

Notice. That under said lease the Skelly Oil Company "has the legal right to occupy and use said land for development and operation purposes, including drilling wells, laying pipe lines, building tanks, towers, stations, structures, gas lift plants, digging slush pits, drainage ditches, etc. thereon and maintain same thereon."

Petition. "That by the terms of said lease the said land was granted, demised, leased and let for the sole and only purpose of mining and operating for oil and gas and laying pipe lines, building tanks, towers, stations and structures thereon to produce same and take care of said products."

Notice. That "any one else attempting to use any part of the surface of said land will do so subject to said rights and at his risk."

Petition. "That the said S. C. Newbern owned the right, title and interest in said land and the exclusive right to the occupancy thereof, save and except the rights owned by the Skelly Oil Company under the terms of said lease."

By way of contrast:

Notice. "Said company will enforce its rights in the courts if that be necessary."

Petition. "That Skelly Oil Company had done no drilling under said lease and had not entered into possession thereof under said lease."

It will be observed from the foregoing comparisons that there is no substantial difference between the allegations of the petition and the statements of the notice in respect to the oil and gas lease upon the land held by the Skelly Company and its legal rights under it. The notice claimed and the petition concedes the right of the Skelly Company to enter upon the land and to occupy all necessary parts of it for the purpose of exploring for gas and oil and of disposing of the same, if found.

Under all the authorities, including those cited by appellant, the action cannot be maintained on either theory of the case, if the statements of fact in the notice were true, and if the threat of suit was based upon its legal rights, and if under the conditions and circumstances then existing the interests of defendant's business fairly called for the assertion of its rights in the land and the threat to enforce such rights by suit. 37 C. J. p. 131; Hutton v. Watters, 132 Tenn. 527, 179 S. W. 134, L. R. A. 1916B, 1238, Ann. Cas. 1916C, 433; Cardon v. McConnell, 120 N. C. 461, 27 S. E. 109; Ward v. Mid-West & Gulf Co., 97 Okl. 252, 223 P. 170; Brennan v. United Hatters, 73 N. J. Law, 729, 65 A. 165, 9 L. R. A. (N. S.) 254, 118 Am. St. Rep. 727, 9 Ann. Cas. 698; Mangum Electric Co. v. Border, 101 Okl. 64, 222 P. 1002; McIlhenny v. Gaidry (C. C. A.) 253 F. 613; John W. Lovell Co. v. Houghton, 116 N. Y. 520, 22 N. E. 1066, 6 L. R. A. 363; Hovey v. Rubber Tip Pencil Co., 57 N. Y. 119, 15 Am. Rep. 470.

In view of the number and size of the billboards placed upon the premises by the company, and the language of the notice placed on the billboards, we think it a legitimate inference as alleged in the petition that the company was "very much opposed to the sale of said lots by the plaintiff," but it does not follow that such opposition was "because of an imagined inconvenience to itself if it should thereafter undertake to develop said lease."

In our view of the case, the inconvenience to the company was not imagined, but very real and serious, if the results which usually follow the sale of lots under similar conditions followed the sale of these lots. At the time the notice was posted, plaintiff had already sold lots amounting in value to $4,100 out of the total of $18,280, and it is alleged that, "except for the wrongful and unlawful action of the defendant * * * plaintiff would have disposed of all of said lots at the prices fixed for the same."

Apparently plaintiff was making good progress in disposing of the lots up to the time of posting the notice, and we must accept his allegation that he would have disposed of all of them if the defendant company had not interfered, and that, too, notwithstanding both he "and his agents in selling said lots advised all purchasers that said lots were being sold subject to the rights of the Skelly Oil Company under said oil and gas lease"; it is alleged further that

"said defendant well knew that plaintiff was selling said lots subject to the oil and gas lease of defendant." Under this situation, it would seem to be apparent that the land covered by the defendant's lease would in a short time be sold to prospective purchasers for residential purposes, and probably in a short time in large part be improved and occupied by the respective purchasers. Knowing, as the company did, that the communications made by plaintiff and his agents to prospective purchasers were not deterring them from buying the lots with the probable intention of improving and occupying the lots purchased by them respectively, was it justified in resorting to the means used by it in its attempt to avoid the complications which would necessarily arise when it undertook to explore the land if it was improved and occupied as probably contemplated by the purchasers?

This 20-acre tract was presumably, at the time the lease was entered into, farming land. In the spring of 1929 oil in close proximity to the town had been discovered which not only created a boom in the town, but doubtless rendered it probable the Skelly Company would desire to enter upon and explore the land under its lease. It is alleged that plaintiff in his contract with Newbern "agreed to plat said land as an addition to the city of Asher to be known as Melrose Park Addition and to sell said lots." It must have been expected, as already said, that the lots platted as Melrose Park addition would be improved by the purchasers and used for residential purposes. The platting of an addition of any size to a town or city usually requires the opening of streets, and contemplates, not only the building of houses to be used as residences and such outbuildings as garages, etc., but also the improvement of streets laid out through the land constituting the addition. These improvements consist of the laying of water, gas, and sewer pipes in the streets and making the necessary connections with the adjacent properties, the erection of telephone poles, the stringing of wires along the streets and into the lots, the paving of streets, and laying of sidewalks.

It is apparent that, when the defendant began to explore this land, residences built by owners of the lots would in many cases have to be torn down or moved, streets and sidewalks interfered with, underground improvements, such as water-mains, water pipes, sewer and sewer connections, and aboveground improvements such as telephone poles, wires, and connections, broken or removed, with resulting ill will and possible—not to say probable—litigation.

It should be observed that this is not a contest between Newbern and the oil company involving their respective rights. It is a contest between the plaintiff, on the one hand, who claims rights with respect to the land growing out of his contract to plat and sell lots, and the Skelly Oil Company, which had the superior right to enter upon the land at any time and exploit it for oil and gas under its lease. The use of the land by the oil company under its lease gave it the right to occupy any part of the land above and below the surface for all necessary purposes. Such use contemplated that no part of the land could be rightfully improved so as to prevent occupation by the oil company, if necessary. On the other hand, platting the land into small lots and their sale to purchasers as an addition to the town of Asher necessarily contemplated the improvement of the lots for residential purposes and the improvement and use of the streets adjacent by those residing on the lots. It is beyond question that such contemplated improvement and use, if carried out, would seriously interfere with the occupation and use of the land by the defendant company. Whatever may have been the express terms of the lease, it was necessarily implied that the land would not by any act of Newbern or those claiming under him be improved so as to prevent or seriously interfere with its occupation and use by the company under its lease. It is nowhere alleged in the complaint that the defendant company did not intend to enter upon and exploit the land under its lease. On the contrary, as we have suggested, such occupation and exploitation was at the time apparently imminent, and we are of the opinion the company was within its rights and justified by the exigencies of the situation in using the rather bizarre method adopted by it to arrest the attention of prospective purchasers of lots and to cause them to visualize probable later conditions. The fact that the public ceased to buy the lots goes to show that the company's disclosure of its rights placed before the eyes of plaintiff's customers was more effective than were the disclosures made to the ears of his customers by plaintiff and his agents. We do not think "the buying public construed and accepted" the notice "to mean and imply that the Skelly Company denied that plaintiff had the right to put any purchasers of lots in possession thereof," or "that any person who purchased would do so at the risk of losing his mon-

ey and if he undertook to occupy said lots under said purchase contract he would be involved in an expensive and vexatious litigation with the defendant," except as might reasonably be expected, if they placed permanent improvements on or in the land before the land had been explored by the company. Though a trespass as to the rights of Newbern, and unusual in method, the notice was otherwise timely and just to the public. The fact that buying ceased is evidence that prospective purchasers had finally visualized the situation as it might soon be. That they ceased to buy should be credited to their wish to avoid almost certain inconvenience and probable financial loss. The defendant company claimed no more than it had a fair right to claim under its lease. If plaintiff's business was hurt by the claim of the company, it was because his business was subordinate to the rights of the company, a handicap he knew of when he undertook to sell the lots.

Judgment affirmed.