**James H. WHITE, Appellant,**

v.

**Reuben LARSON, Individually and d/b/a Interstate Realty Company, Appellee.**

**No. 6840.**

Court of Civil Appeals of Texas, El Paso.

Aug. 15, 1979.

Edwards, Belk, Hunter & Kerr, Frank H. Hunter, El Paso, for appellant.

Charles E. Anderson, Milton D. Wyrick, El Paso, for appellee.

## OPINION

OSBORN, Justice.

This case involves the rights of real estate agents to a commission under two different Listing Contracts involving the same property. Suit was filed by Appellant to obtain a declaratory judgment as to his right to a commission under the earlier contract. The Appellee filed a cross-action for damages alleging a wrongful interference with his contract which was in existence when the sale was made. Based upon a jury verdict, judgment was entered for Appellee. We reverse and render.

On November 27, 1973, Johnny Garren signed a listing contract with the James C. White Realty Company authorizing the latter to show and offer for sale approximately twenty-eight acres of land and improvements in Dona Ana County, New Mexico, known as the Lazy "S" Ranch. The listing contract included the usual sales information, described the property and existing liens and contained the following clause:

> For and in consideration of $1.00 paid in hand and services rendered and to be performed, the undersigned owner hereby employs the James C. White Realty Company, Realtors, and associates (collectively referred to as 'Agent') as sole and exclusive sales agent to sell for said Owner the above described property for the price and terms specified, or for any other price and on any other terms and conditions that shall be accepted by Owner; and if sold during the term of this listing or sold thereafter, in whole or in part, if the Agent is the procuring cause of such sale, Owner agrees to pay to said Agent a commission of 6% of the sale price of said property.

That contract expired on September 30, 1974. A new contract dated November 11, 1974, extended the listing to December 31, 1974, and also had the same clause as to the agent's commission.

During the period covered by these listing agreements, Mr. Conke Viramontes, an agent with the White Realty Company, showed the property to Jose Diaz on two occasions and on several occasions discussed a possible sale with him. No offer was ever made prior to termination of the second listing which expired at the end of 1974.

Some time in late 1974, George Luther, an agent with Interstate Realty Company, contacted Mr. Garren and got a listing contract and placed sales signs on the property. When he was advised that White Realty Company still had a contract on the property, he destroyed the contract and took down the signs. On January 10, 1975, he obtained a new listing contract and again put up signs on the property. This contract called for a $25,000.00 commission and it provided:

> For and in consideration of the agreement of the Agent, as hereinafter defined, to exercise diligence to sell the property described on the reverse side hereof, as evidenced by said Agent's acceptance of this listing, the undersigned Owner hereby employs _Interstate Realty Company_, Realtor, as the sole and exclusive agent, except only as hereinafter provided, with the exclusive right to sell the property for said Owner until _May 10_, 19_75_, at 11:00 P.M., for the price and upon the terms specified or for such other price or upon such other terms or trade, as may be acceptable to the Owner. Owner agrees to sell the property for the said price and upon the terms specified herein.

This contract had a provision for payment of the commission if the agent was the procuring cause of a sale within 120 days after the expiration of the contract.

Both Mr. White and Mr. Viramontes testified that they did not know about the listing contract with Interstate Realty Company. The property was listed with Multiple Listing Service of which the White agency was a member, but Mr. White testified his agency did not use Multiple Listing Service on farm property.

On or about April 3, 1975, Mr. Diaz contacted Mr. Viramontes to see if the property was still for sale and to make an offer. Mr. Viramontes contacted Mr. Garren who told him to call his attorney. Mr. Viramontes and Mr. Diaz met with the attorney and a sales contract was signed for a price of $310,000.00 and for a commission to the White agency of $17,000.00. On the same date, Mr. Garren contacted Interstate Realty Company and made an agreement that if he, Mr. Garren, sold the property himself the commission to Interstate Realty Company would be 1% of the sales price. The closing statement provided for payment of $17,000.00 to White Realty Company and $3,100.00 to Interstate Realty Company.

On trial of the case, the jury found White or his agent, Viramontes, knew or should have known of the listing contract with Interstate Realty Company; that White or Viramontes interfered with such contract; that such interference was willful and intentional; that Viramontes first showed the property to the ultimate purchaser and was the producing cause of the sale; that the interference was a proximate cause of any money loss to Interstate Realty Company; damages of $9,400.00; that White and Viramontes acted with malice and that exemplary damages should be assessed in the sum of $25,000.00. The trial Court entered judgment on the verdict, and then ordered a remittitur of $22,000.00 of exemplary damages and such remittitur was filed.

By his First Point of Error, Appellant complains of the error of the trial Court in overruling his motion for instructed verdict. One of the grounds asserted was that the tort of willful interference with a contract requires that the conduct be without legal justification, and that by the listing contract the White agency had the right to sell even after its contract expired if it was the procuring cause of the sale. Thus, it was asserted in the trial Court, and now in the first point of error, that a basic element of the cause of action was not established.

It appears that Mr. Garren gave both White Realty Company and Interstate Realty Company what is generally referred to as an "exclusive agency to sell." In *Baker v. Skipworth*, 244 S.W.2d 299 (Tex.Civ.App. —Fort Worth 1951, writ ref'd), the court said:

A clear distinction is drawn between the appointment of a broker as an "exclusive agent to sell" and the granting to him the "exclusive right to sell." In the former contract, the owner does not surrender his own right to sell the property and in the event he does so, is under no obligation to pay a commission to the broker. In the latter case, the broker is entitled to his commission if owner makes sale during the life of the contract.

■ But, since the sale was clearly not made by the owner, the issue remains as to the effect of the language in the White listing agreement which provides for a commission if the property is sold after the term of the exclusive listing and the agent is the procuring cause of such sale. We believe the only conclusion that can be reached is that where a contract gives an agent a right to a commission after the "exclusive agency" has expired, the agent still has a right to complete a sale where he is "the procuring cause of such sale." That clause is written into the contract for a very valid reason. If an agent works for a substantial period of time with a prospective purchaser but is unable to complete a sale before the listing expires, all efforts are lost. But by knowing he has a right to a commission for work done before the listing expires, if a sale is completed after the expiration date, the agent will continue to use his best efforts to complete a sale, thus accomplishing the basic purpose for which

the contract was originally made. To hold otherwise would be to void a part of the contract and destroy a valuable right expressly conferred upon the real estate agent. See *Kaye v. Coughlin*, 443 S.W.2d 612 (Tex.Civ.App.—Eastland 1969, no writ); *Limberopoulos v. Tom Fannin and Associates*, 17 Ariz.App. 35, 495 P.2d 475 (1972); Brokers' Fees—Sale After Listing, Annot., 51 *A.L.R.3d* 1149 at 1161 et seq. (1973).

Having concluded that White Realty Company had a right to sell the property since it was the "procuring cause of such sale," we now turn to the issue of what rights, if any, Interstate Realty had by reason of their "exclusive agency" at the time the sale was completed.

The law certainly recognizes a cause of action for interference with contractual rights. See Harper & James, 1 *Law of Torts* Ch. VI (1956), and Prosser, *Torts*, Sec. 129 (4th ed. 1971); Contractual Interference—Realty Brokers, Annot., 34 *A.L.R.3d* 720 (1970). This Court has recently considered cases where damages were sought for tortious conduct involving contractual rights and obligations. *Armendariz v. Mora*, 553 S.W.2d 400 (Tex.Civ.App.—El Paso 1977, writ ref'd n. r. e.); *Herider Farms-El Paso, Inc. v. Criswell,* 519 S.W.2d 473 (Tex.Civ.App.—El Paso 1975, writ ref'd n. r. e.).

One of the earliest Texas cases to consider such a cause of action was *Tidal Western Oil Corporation v. Shackelford*, 297 S.W. 279 (Tex.Civ.App.—Fort Worth 1927, writ ref'd). Quoting from 15 *Ruling Case Law* 63, the court stated the law as follows:

"A prima facie case of wrongful interference with a contract is made out if there are alleged: (1) Intentional and willful acts; (2) calculated to cause damage to plaintiffs in their lawful business; (3) done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual damage and loss resulting."

The court in its opinion went on to say:

It may be conceded for the purposes of argument that it is not necessary in every case that the party interfering shall have acted with malice, express or implied, but we think it must certainly be held, as indicated in the quotations above from R.C.L., and from the case of *Lytle v. G., H. & S. A. Ry. Co.*, [100 Tex. 292, 99 S.W. 396,] that the acts of interference to be actionable must have been knowingly done without right or justifiable cause.

The court ended up concluding that where a party had a contractual right to do the very thing about which complaint was made, there was a legal right or justification and no cause of action would arise out of such conduct. The court noted that: "The proper exercise of a legal right cannot constitute a legal wrong for which an action will lie."

In a case involving contractual rights by two different firms to do the printing work of certain magazines, a similar issue was presented. In deciding their respective rights, the court in *In re Farrell Publishing Corporation*, 165 F.Supp. 40 (U.S.D.C., New York 1958), said:

The law is clear that where a party acts to further its own advantage and has a present existing economic interest to protect such as a prior contract of its own, it is privileged to prevent performance of the contract of another which threatens it. Prosser on Torts, 2nd Ed., p. 737; Carpenter, "Interference with Contract Relations," 41 Harvard Law Review 728, 746–747; 4 Restatement of Torts, § 773; *Knapp v. Penfield*, Sup.Ct. Ny.Co. 1932, 143 Misc. 132, 256 N.Y.S. 41; *Williams v. Adams*, 1st Dept. 1937, 250 App.Div. 603, 295 N.Y.S. 86; *Messine v. Continental Purchasing Co.*, 1936, 272 N.Y. 125, 5 N.E.2d 62; *Lawless v. Brotherhood of Painters*, 1956, 143 Cal.App.2d 474, 300 P.2d 159. See, also, *Tidal Western Oil Corp. v. Shackelford*, Tex.Civ.App. 1927, 297 S.W. 279, 280, 281; *Quinlivan v. Brown Oil Co.*, 1934, 96 Mont. 147, 29 P.2d 374; *Morrison v. Frank*, Sup.Ct.N.Y.Co. 1948, 81 N.Y.S.2d 743; *Conway v. Skelly Oil Co.*, 10 Cir., 1931, 54 F.2d 11.

Later on in that same opinion, the court quoted from the decision in *Lawless v.*

*Brotherhood of Painters*, 143 Cal.App.2d 474, 300 P.2d 159 (1956), where the court noted:

> If two parties have separate contracts with a third, each may resort to any legitimate means at his disposal to secure performance of his contract even though the necessary result will be to cause a breach of the other contract.

We conclude that where there existed a right upon the part of the White Realty Company to a commission, if it be the procuring cause of the sale, after the exclusive agency expired, and thus a right to complete a sale under those circumstances, there did exist a legal right and justification to make such sale and there exists no cause of action in favor of Interstate Realty Company. Since the facts as to the contractual rights of White Realty Company and it being the producing cause of the sale were established without dispute and as a matter of law, we conclude the motion for instructed verdict should have been granted. The Appellant's point of error number one is sustained. It is not necessary that we pass upon the other points of error. The judgment of the trial Court is reversed, and judgment rendered for the Appellant denying all relief sought by the Appellee.