Monty BUCK, Appellant,

v.

**CENTURY 21 BEEZLEY REAL ESTATE, INC., Bonnie Schafer, and Billie Hutchinson, Appellees.**

No. 11–94–087–CV.

Court of Appeals of Texas, Eastland.

Sept. 14, 1995.

Rehearing Overruled Nov. 2, 1995.

Mark C. Enoch, Ruth A. Wagoner, Glast, Phillips & Murray, P.C., Dallas, for appellant.

Robert A. Miller, Prager & Benson, Dallas, for appellees.

ARNOT, Chief Justice.

Monty Buck sued Century 21 Beezley Real Estate, Inc., Bonnie Schafer, and Billie Hutchinson (Century 21) for tortiously interfering with his contract to purchase real estate. The trial court granted a summary judgment to Century 21 based on its affirmative defense of "legal justification." Buck appeals, bringing as his sole point of error that the trial court erred in granting a summary judgment. Because the summary judgment evidence does not conclusively establish that Century 21's assertion of its contractual rights were in "good faith," a fact question, we reverse and remand.

Robert and Frances Baker wanted to sell their home situated on 40 acres near Forney. On March 31, 1993, the Bakers executed an exclusive listing agreement with Century 21. The purchase price was $350,000. The agreement provided that Century 21 would be the "sole and exclusive agent ... with the exclusive right to sell ... the [p]roperty" for one year. In July of 1993, unassisted by any real estate agent, Buck met with the Bakers, viewed the property, and made an offer on the land. By deposition, Buck testified that he was aware that Century 21 had a listing agreement on the property when he made his offer. The Bakers and Buck executed a handwritten contract of sale in which the Bakers agreed to sell the property based on a percentage of the appraised value. The contract provided, in the event any reduction in the real estate agent's commission could be negotiated, that that amount would go to the Bakers. Buck was aware that the property would be subsequently shown to other buyers. When Buck asked Mr. Baker what he would tell the agent who was scheduled to show the property later that day, Mr. Baker replied, "I've got it sold."

That evening, the property was shown to Dr. Cynthia Shughrue by Schafer, the real estate agent. Assisted by Schafer, Baker and his wife executed a contract of sale with Shughrue for $350,000. When no agreement could be reached between the prospective purchasers as to which contract was prior, Buck sued Century 21 alleging tortious interference with a contract. Century 21 filed a motion for summary judgment urging, as an affirmative defense, "legal justification."

The elements of a cause of action for tortious interference are (1) the existence of a contract subject to interference, (2) an act of interference which was willful and intentional, (3) which was a proximate cause of plaintiff's damage, and (4) the occurrence of actual damages or loss. *Holloway v. Skinner*, 898 S.W.2d 793 (Tex.1995); *Juliette Fowler Homes, Inc. v. Welch Associates, Inc.*, 793 S.W.2d 660 (Tex.1990); *Sterner v. Marathon Oil Company*, 767 S.W.2d 686

(Tex.1989); *Sakowitz, Inc. v. Steck,* 669 S.W.2d 105 (Tex.1984).

Century 21 maintains that it exercised its own rights and duties under its exclusive listing agreement with the Bakers. Century 21's listing agreement with Baker provided that:

> Owner agrees to refer to Broker all inquiries received by Owner relating to the purchase or sale of the Property and to conduct all negotiations with prospective buyers of the Property through Broker ... After Owner has *accepted an offer* with respect to the Property, Owner hereby requests (i) Broker to submit back-up offers ... and (ii) Broker to continue showing the Property. (Emphasis added).

Assuming without agreeing that it interfered with Buck's contract and that the summary judgment evidence shows that it had knowledge of Buck's prior existing contract of sale, Century 21 urges that, as a matter of law, it established the affirmative defense of "legal justification," citing *White v. Larson,* 586 S.W.2d 212 (Tex.Civ.App.—El Paso 1979, no writ), and *Galveston County Fair & Rodeo, Inc. v. Glover,* 880 S.W.2d 112 (Tex.App.—Texarkana 1994, no writ), as authority.

In *Victoria Bank & Trust Company v. Brady,* 811 S.W.2d 931 (Tex.1991), the court discussed the affirmative defense of "legal justification" and stated:

> However in *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686 (Tex.1989), this court partially overruled *Sakowitz* and held that "the privilege of legal justification or excuse in the interference of contractual relations is an affirmative defense upon which the defendant has the burden of proof." 767 S.W.2d at 690. Under the defense of legal justification or excuse, one is privileged to interfere with another's contractual relations (1) if it is done in a bona fide exercise of his own rights, or (2) if he has an equal or superior right in the subject matter to that of the other party. *Sterner v. Marathon Oil Co.,* 767 S.W.2d at 691; *Sakowitz, Inc. v. Steck,* 669 S.W.2d at 107. One may be "privileged" to assert a claim "even though that claim may be doubtful, so long as it asserted a colorable legal right." *Sakowitz, Inc. v. Steck,* 669 S.W.2d

at 107 (citing *Hardin v. Majors,* 246 S.W. 100, 102 (Tex.Civ.App.—Amarillo 1923, no writ)). *However, the defense of legal justification or excuse only protects good faith assertions of legal rights.* See *Sakowitz, Inc. v. Steck,* 669 S.W.2d at 107, 109; *American Petrofina, Inc. v. PPG Industries, Inc.,* 679 S.W.2d 740, 758–59 (Tex. App.—Fort Worth 1984, writ dism'd by agr.); *Bellefonte Underwriters Ins. Co. v. Brown,* 663 S.W.2d 562, 573 (Tex.App.—Houston [14th Dist.] 1983), *aff'd in part and rev'd in part on other grounds,* 704 S.W.2d 742 (Tex.1986); *Hardin v. Majors,* 246 S.W. at 102 ("[A] party to or interested in a contract may, by legal proceedings or otherwise in good faith, interfere with the execution of the contract where there is a bona fide doubt as to his rights under it."); Restatement (Second) of Torts § 773 (1979). (Emphasis added)

■ When reviewing a summary judgment, this court will adhere to the following standards:

> (1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

> (2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

> (3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

TEX.R.CIV.P. 166a; *Goswami v. Metropolitan Savings and Loan Association,* 751 S.W.2d 487, 491 (Tex.1988); *Nixon v. Mr. Property Management Company, Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985); *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979).

■ To support his argument that there was a material fact issue present, Buck offered the following summary judgment evidence. Beezley was the President of Century 21. When confronted by Buck that he had a pre-existing contract, Beezley stated: "[M]y lawyer says that your contract is no good." In her deposition, Schafer admitted not only that she was aware of the Baker-

Buck contract but also that she had seen it before the Baker–Shughrue contract was executed. In the original suit, Buck obtained a temporary restraining order prohibiting the Bakers as well as Century 21 and:

> [T]heir agents, servants and employees from directly or indirectly selling, transferring, leasing, encumbering, alienating or hypothecating in any way the house, improvements and 40 acres located at 220 Valley View, Forney, Texas.

Century 21 acknowledged that it was subject to the terms of the temporary restraining order.

*Victoria Bank* established that the affirmative defense of "legal justification" only protects "good faith" assertions of one's legal rights. Normally, the issue of "good faith" is a fact question. Therefore, to uphold a summary judgment in support of "legal justification," the movant would have to establish its "good faith" as a matter of law.

Buck argues that the temporary restraining order was entered, preventing the sale of the property. Shughrue could not obtain financing for her original contract of sale. Nine days after the temporary restraining order to assist her financing, Century 21 and Shughrue created two new contracts of sale: one for the house and one for the additional acreage. The new contracts were then backdated to the same date as Shughrue's original contract which was prior to the effective date of the temporary restraining order; and the sale was subsequently consummated on these contracts.

Century 21 argues that these acts were no more than the submission of a backup offer and were, therefore, "legally justified" under their listing agreement. Regardless, this does not establish the fact question of "good faith" as a matter of law.

The cases relied upon by Century 21 are distinguishable. In White v. Larson, supra, Johnny Garren, the seller, gave a listing contract to White Realty Company. While it terminated on December 31, 1974, the contract provided that the agent could receive a commission if his efforts were the producing cause of a sale of the property within 120 days of the expiration of the contract. Sub-

sequently, Garren gave a listing contract to Interstate Realty. White Realty produced a purchaser during the secondary term of its listing agreement but within the primary term of Interstate Realty's listing agreement. In the suit filed by Interstate Realty for the sales commission, the court held that White Realty had not tortiously interfered because it was legally justified in the exercise of its own contract.

In *Galveston County Fair & Rodeo, Inc. v. Glover, supra,* Eric Glover's steer was judged to be the grand champion of the fair. The court noted that the contest rules vested absolute discretion to disqualify an animal by following specified procedures and that Glover agreed to those rules when he entered the contest. The steer was purchased at auction for $13,500 by Del Papa Distributors. The judge of the animals informed Fair officials that he had some reservations about whether Glover's steer had been "aired up" in violation of Fair rules with the injection of air under its skin to create a more attractive appearance. The president of the Fair's board told Del Papa that it had the option to buy or not to buy the steer. Subsequently, Glover's steer was disqualified. Glover sued the Fair alleging, among other causes of action, slander and defamation and tortious interference with his contract with Del Papa.

The court found that the only act of interference alleged was the Fair's statement to Del Papa that it did not have to pay for the steer because it was improperly fitted. In its discussion of Glover's slander action, the court found that this statement, as a matter of law, was subject to a qualified privilege. A qualified privilege is lost only when the defamatory material is published or communicated with actual malice. In *Glover,* the jury found that the Fair acted with malice. However, the trial court disregarded this answer finding no evidence to support it. The court of appeals agreed that there was no evidence to support a finding of malice on the part of the Fair.

First and most significantly, neither *White* nor *Glover* was a summary judgment case. *White* was decided before *Sterner* which established "legal justification" as an affirmative defense and shifted the burden of prov-

ing "legal justification" to the alleged interferer. In *Glover*, Glover failed to establish that the Fair acted with malice. Because there was no evidence of malice, there was no tortious interference on the part of the Fair. Consequently, the issue of the affirmative defense was necessarily not reached.

 The issue of "good faith" is normally a question of fact. Because the evidence does not conclusively establish that Century 21 acted in good faith, we sustain Buck's point of error.

The judgment of the trial court is reversed, and the cause is remanded.